[L.A. No. 30662. Jan. 4, 1977.]

WALTER H. MILLER, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

810

**COUNSEL**

Walter H. Miller, in pro. per., for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Melvin R. Segal, Deputy Attorney General, for Defendants and Respondents.

## OPINION

**SULLIVAN, J.**—We deal here with issues arising out of the reduction in the mandatory age of retirement of a state employee from the age of 70 years to the age of 67 years. ■ The controversy presents essentially two questions: First, was plaintiff who had accumulated a number of years of service prior to the change in the law, entitled, notwithstanding the change, to remain in state employment until the age of 70? ■ Second, even if he were not so entitled, did the reduction in the mandatory age of retirement impair a vested right of plaintiff to qualify for a larger monthly pension based on service until the age of 70 so as to entitle him to recover from the state for such financial loss? We answer both questions in the negative and accordingly affirm the judgment.

The facts as found by the trial court are not disputed. Plaintiff, born August 3, 1907, was employed by the State Controller as an assistant inheritance tax attorney in the Inheritance and Gift Tax Division of the Controller's office under the state civil service laws. He first entered state service on September 1, 1939, at which time he became a member of what is now called the Public Employees' Retirement System (PERS). (Gov. Code, § 20004.)[1] He continued in state employment, except for a period of military leave, for approximately 35 years and obtained promotions to senior inheritance tax attorney and ultimately to assistant chief inheritance tax attorney. On September 1, 1974, plaintiff was placed on retirement because he had then reached the mandatory retirement age of 67 years as prescribed by section 20981.

Prior to July 1, 1971, section 20981 provided that, with certain exceptions not here applicable, an individual in plaintiff's category "shall be retired on the first day of the calendar month next succeeding that in which he attains age 70." Effective on that date, section 20981 was amended to provide inter alia that "those who attain age 67 on or after October 1, 1973, shall be retired on the first day of the calendar month next succeeding that in which they attain age 67 . . . ." (Stats. 1971, ch. 170, § 38, p. 231.) Plaintiff became 67 on August 3, 1974.

Defendant Board of Administration of the Public Employees' Retirement System fixed plaintiff's pension at $1,863 per month and he has

---

[1]Hereafter, unless otherwise indicated, all section references are to the Government Code.

been receiving this amount since his retirement. This figure is higher, in an undetermined amount, than plaintiff would have received had he voluntarily retired at age 67 under the law in effect prior to July 1, 1971. This is due to the fact that at the same time as it reduced the mandatory age of retirement, the Legislature increased, for all ages of retirement, the benefit factor set forth in section 21251.13 used in determining the pension of a member of PERS. (Stats. 1971, ch. 170, § 42.) The benefit factor, when multiplied by the employee's years of service, gives the percentage of his highest average salary during three consecutive years which the employee will receive as a total pension. In plaintiff's case, the benefit factor was increased from 2.283 percent to 2.418 percent (with an appropriate reduction for service also covered by Social Security) for retirement at age 67.[2] If the compulsory age of retirement had not been reduced from 70 to 67, plaintiff would have been permitted to continue in state employment until September 1, 1977. Had he done so, remaining in his final position and receiving salary increases as the Legislature provided, his retirement pension at age 70 based on the benefit factor in effect under former law would have been at least $2,365 per month.[3]

Plaintiff's first amended complaint for mandate and for damages for breach of contract sought a variety of relief which we summarize as follows: 1) a judgment declaring the above reduction in the mandatory age of retirement "void and unconstitutional as applied to plaintiff" as being violative of the contract clause of the federal Constitution (U.S. Const., art. I, § 10) and of the due process clauses of both the federal (U.S. Const., Amends. 5th and 14th) and state (Cal. Const., art. I, § 7, subd. (a)) Constitutions; 2) a writ of mandate restoring plaintiff to his former position in state employment with all rights and benefits accruing to that position; 3) a judgment for the amount of plaintiff's financial loss resulting from his receipt of a smaller pension upon his retirement at age 67 than at age 70.

The trial court on the basis of findings of fact substantially as related above concluded that the change in the mandatory age of retirement applicable to plaintiff's position did not impair or violate any of his

[2]The benefit factors in effect prior to July 1, 1971, are set forth in Statutes 1967, chapter 1594, section 1, page 3821. Under the prior law, the benefit factor was the same for retirement at all ages from 65 to 70. Under the present law, the benefit factor is the same for all ages from 63 to 67.

[3]This figure set forth by the trial court in its findings of fact reflects a salary increase for plaintiff's position which was provided after the date of his retirement and prior to trial on September 26, 1975. It of course does not reflect salary increases which have occurred since trial and which may occur prior to September 1, 1977.

rights and that "Plaintiff had no contractual or vested right to remain employed in state service until the age specified for mandatory retirement under the Public Employees' Retirement System law at any particular time during his employment and is bound by the legislative determination of the age at which he must retire from state service."[4] Accordingly, the court entered judgment denying plaintiff's petition for a peremptory writ of mandate and directing that he take nothing by his complaint. This appeal followed.

■ We first consider whether plaintiff was entitled to remain in state service beyond the age of 67 notwithstanding the change in the mandatory age of retirement applicable to his position. Plaintiff contends that he has a vested, *contractual* right, based on the mandatory retirement age in effect when he was first employed by the state, to continue in state service until age 70. He points out that he accepted employment to age 70, continued to serve the state on this understanding for 31 years and made his life plans accordingly. Furthermore, he argues, since he was at all times a civil service employee, the denial of his alleged vested contractual right not only unlawfully changes the terms and conditions of his employment but also frustrates the state civil service system. Plaintiff cites no authority supportive of his position.

■ On the contrary it is well settled in California that public employment is not held by contract but by statute and that, insofar as the duration of such employment is concerned, no employee has a vested contractual right to continue in employment beyond the time or contrary to the terms and conditions fixed by law. (*Butterworth* v. *Boyd* (1938) 12 Cal.2d 140, 150 [82 P.2d 434, 126 A.L.R. 838]; *Patton* v. *Board of Harbor Commissioners* (1970) 13 Cal.App.3d 536, 540 [91 Cal.Rptr. 832]; *Humbert* v. *Castro Valley County Fire Protection Dist.* (1963) 214 Cal.App.2d 1, 13 [29 Cal.Rptr. 158]; *Payne* v. *State Personnel Board* (1958) 162 Cal.App.2d 679, 681 [328 P.2d 849]; *Boutwell* v. *State Board of Equalization* (1949) 94 Cal.App.2d 945, 950 [212 P.2d 20]; *Risley* v. *Bd. of*

---

[4]The trial court's conclusions of law are as follows:

"1. The mandatory retirement provision in [Stats. 1971] Chapter 170 does not violate any of plaintiff's constitutional rights.

"2. The changes accomplished by [Stats. 1971] Chapter 170 do not constitute an impairement [*sic*] of vested rights or contract protected by the state or federal constitutions.

"3. Plaintiff had no contractual or vested right to remain employed in state service until the age specified for mandatory retirement under the Public Employees' Retirement System law at any particular time during his employment and is bound by the legislative determination of the age at which he must retire from state service."

*Civil Service Commrs.* (1943) 60 Cal.App.2d 32, 37-38 [140 P.2d 167]; compare *Pennie* v. *Reis* (1889) 80 Cal. 266, 269 [22 P. 176]; *Miller* v. *Kister* (1885) 68 Cal. 142, 144 [8 P. 813].) ▮ Nor is any vested contractual right conferred on the public employee because he occupies a civil service position since it is equally well settled that "[t]he terms and conditions of civil service employment are fixed by statute and not by contract." (*Boren* v. *State Personnel Board* (1951) 37 Cal.2d 634, 641 [234 P.2d 981]; see also *Martin* v. *Henderson* (1953) 40 Cal.2d 583, 590-591 [255 P.2d 416]; *State* v. *Brotherhood of R.R. Trainmen* (1951) 37 Cal.2d 412, 417 [232 P.2d 857]; *Townsend* v. *County of Los Angeles* (1975) 49 Cal.App.3d 263, 267-268 [122 Cal.Rptr. 500]; *Gilmore* v. *Personnel Board* (1958) 161 Cal.App.2d 439, 448-449 [326 P.2d 874]; *Risley* v. *Bd. of Civil Service Commrs., supra.*) ▮ Indeed, "[t]he statutory provisions controlling the terms and conditions of civil service employment cannot be circumvented by purported contracts in conflict therewith." (*Boren, supra,* at p. 641.)

▮ In view of these long and well settled principles, we conclude that the power of the Legislature to reduce the tenure of plaintiff's civil service position and thereby to shorten his state service, by changing the mandatory retirement age was not and could not be limited by any contractual obligation.

Plaintiff's reliance upon decisions concerning the pension rights of public employees is misplaced. This court has held, as will be explained hereafter, that pension rights involve "obligations which are protected by the contract clause of the Constitution." (*Kern* v. *City of Long Beach* (1947) 29 Cal.2d 848, 853 [179 P.2d 799].) The court, however, distinguished decisions containing language, "to the general effect that public employment is not held by contract" because of the fact that "[t]hese cases involve the right to remain in an office or employment, or to the continuation of civil service status." (*Id.,* at pp. 852-853.) ▮ Pension rights, unlike tenure of civil service employment, are deferred compensation earned immediately upon the performance of services for a public employer "[and] cannot be destroyed . . . without impairing a contractual obligation. Thus the courts of this state have refused to hold, in the absence of special provision, that public employment establishes tenure rights, but have uniformly held that pension laws . . . establish contractual rights." (*Id.,* at p. 853.)

▮ Thus, under settled law, plaintiff had no vested contractual right to remain in state employment until age 70. Since defendants were

required by statute to retire plaintiff at age 67 and plaintiff does not in any other manner challenge the validity of his compulsory retirement, we hold that he was not entitled to remain in state employment after age 67 and consequently has no right to be reinstated.

■ Having so concluded, we turn to consider the second question presented: Did this circumstance nevertheless work an impairment of any vested right to earn a larger monthly pension based upon continued state service until age 70? Although the tenure of a public employee is not ordinarily based on contract, it is well established that "public employment gives rise to certain obligations which are protected by the contract clause of the Constitution, including the right to the payment of salary which has been earned." (*Kern* v. *City of Long Beach, supra,* 29 Cal.2d 848, 853.) Accordingly, this court has repeatedly held that "[s]ince a pension right is 'an integral portion of contemplated compensation' [citation] it cannot be destroyed, once it has vested, without impairing a contractual obligation." (*Id.*)

We have also held that the right to pension benefits vests upon the acceptance of employment (*Dickey* v. *Retirement Board* (1976) 16 Cal.3d 745, 749 [129 Cal.Rptr. 289, 548 P.2d 689]; *In re Marriage of Brown* (1976) 15 Cal.3d 838, 845-846 [126 Cal.Rptr. 633, 544 P.2d 561]; *Kern* v. *City of Long Beach, supra,* 29 Cal.2d 848, 855; *Dryden* v. *Board of Pension Commrs.* (1936) 6 Cal.2d 575, 579 [59 P.2d 104]), even though the right to immediate payment of a full pension may not mature until certain conditions are satisfied. As we stated in *Kern,* "It is true that an employee does not earn the right to a full pension until he has completed the prescribed period of service, but he has actually earned some pension rights as soon as he has performed substantial services for his employer. [Citations.] He is not fully compensated upon receiving his salary payments because, in addition, he has then earned certain pension benefits, the payment of which is to be made at a future date. While payment of these benefits is deferred, and is subject to the condition that the employee continue to serve for the period required by the statute, the mere fact that performance is in whole or in part dependent upon certain contingencies does not prevent a contract from arising, and the employing governmental body may not deny or impair the contingent liability any more than it can refuse to make the salary payments which are immediately due." (*Kern* v. *City of Long Beach, supra,* 29 Cal.2d 848, 855.)

■

■ Although vested prior to the time when the obligation to pay matures, pension rights are not immutable. For example, the government entity providing the pension may make reasonable modifications and changes in the pension system. This flexibility is necessary "to permit adjustments in accord with changing conditions and at the same time maintain the integrity of the system and carry out its beneficent policy." (*Kern* v. *City of Long Beach, supra,* 29 Cal.2d 848, 854-855; see also *Wallace* v. *City of Fresno* (1954) 42 Cal.2d 180, 183 [265 P.2d 884]; *Packer* v. *Board of Retirement* (1950) 35 Cal.2d 212, 214 [217 P.2d 660].) In *Wallace,* referring to *Kern,* we again emphasized "that a public pension system is subject to the implied qualification that the governing body may make reasonable modifications and changes before the pension becomes payable and that until that time the employee does not have a right to any fixed or definite benefits but only to a substantial or reasonable pension." (42 Cal.2d at p. 183.)

■ The scope of permissible modifications of vested pension rights was established in *Allen* v. *City of Long Beach* (1955) 45 Cal.2d 128 [287 P.2d 765], and *Abbott* v. *City of Los Angeles* (1958) 50 Cal.2d 438 [326 P.2d 484]: "Such modifications must be reasonable, and it is for the courts to determine upon the facts of each case what constitutes a permissible change. To be sustained as reasonable, alterations of employees' pension rights must bear some material relation to the theory of a pension system and its successful operation, and changes in a pension plan which result in disadvantage to employees should be accompanied by comparable new advantages." (*Allen, supra,* at p. 131.) "[I]t is advantage or disadvantage to the particular employees whose own contractual pension rights, already earned, are involved which are the criteria by which modifications to pension plans must be measured." (*Abbott, supra,* at p. 449.)

■ On the basis of the foregoing authorities, particularly our decisions in *Allen* and *Abbott,* plaintiff contends that the reduction in the mandatory age of retirement unconstitutionally impaired his vested pension rights by forcing him to accept a pension substantially less than he would have received had he worked until age 70. He argues that he was severely disadvantaged without being afforded comparable new advantages. In response defendants contend that plaintiff's loss of pension benefits resulted not from an impairment of his vested rights, but from the occurrence of a condition subsequent to the accrual of those rights, namely plaintiff's lawful termination from employment prior to the time when his right to full benefits would have matured. (See 52

Ops.Cal.Atty.Gen. 86 concluding that the reduction in the mandatory age of retirement of peace officers from 65 to 60 did not constitute the deprivation of a vested right.) We agree with defendants.

As our above cited decisions make clear, upon acceptance of public employment plaintiff acquired a vested right to a pension based on the system then in effect. That system allowed him to earn successively higher levels of benefits based on his years of service and his highest average salary during three consecutive years of employment. Under that system, he could have achieved maximum benefits had he worked until age 70. Although his right to a pension based on this system was vested, plaintiff was not assured of receiving maximum pension benefits. His right to receive such benefits was subject to conditions and contingencies; specifically, that he remain in state employment until age 70. Plaintiff failed to satisfy that condition since he was lawfully placed on retirement at age 67. Thus, his right to a maximum pension based on retirement at age 70 never matured.

It avails plaintiff nothing that he failed to work until age 70 because the Legislature forced him to retire at age 67. Although he was entitled to earn increased pension benefits so long as he remained in state employment, as we explained above, plaintiff had no vested contractual right to continue working for any specified period of time. In short, his membership in PERS did not confer on him the right to remain in state employment beyond age 67 and he had no constitutionally protected right to continue in his position until age 70 in order to receive a larger retirement allowance. (See 52 Ops.Cal.Atty.Gen., *supra,* 86, 88.)

As we stated in *Kern* v. *City of Long Beach, supra,* 29 Cal.2d 848, 853, "The fact that a pension right is vested will not, of course, prevent its loss upon the occurrence of a condition subsequent such as lawful termination of employment before completion of the period of service designated in the pension plan." (See also *Dickey* v. *Retirement Board, supra,* 16 Cal.3d 745, 749.) Lawful termination for cause, for example, is a condition which may result in a loss of vested rights.    In the case at bench, the power of the Legislature, unfettered by contract, reduced the mandatory age of retirement and thereby created the condition subsequent whose occurrence not only terminated plaintiff's employment but also defeated his expectation of additional salary and a larger retirement allowance.

Since we conclude that plaintiff's loss of a larger retirement allowance resulted from his lawful termination before his right to it matured, we need not undertake the method of analysis required by *Allen* and *Abbott* for determining whether the changes in the state's pension system were reasonable. Suffice it to say plaintiff suffered no impairment of vested rights.

To recapitulate, we hold that plaintiff had no vested contractual right to remain in public employment beyond the age of retirement established by the Legislature. Upon being required by law to retire at age 67 rather than age 70, plaintiff suffered no impairment of vested pension rights since he had no constitutionally protected right to remain in employment until he had earned a larger pension at age 70.

The judgment is affirmed.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Clark, J., and Richardson, J., concurred.