[Civ. No. 51995. Second Dist., Div. Five. Dec. 7, 1978.]

CALIFORNIA LEAGUE OF CITY EMPLOYEE ASSOCIATIONS, Plaintiff and Respondent, v.
PALOS VERDES LIBRARY DISTRICT et al.,
Defendants and Appellants.

**COUNSEL**

John H. Larson, County Counsel, William F. Stewart and Joe Ben Hudgens, Deputy County Counsel, for Defendants and Appellants.

Don P. Bonfa, City Attorney, and James Georges, Deputy City Attorney, as Amici Curiae on behalf of Defendants and Appellants.

Lemaire, Faunce & Katznelson and Edward L. Faunce for Plaintiff and Respondent.

## OPINION

ASHBY, J.—Plaintiff employee organization, on behalf of its member employees of defendant Palos Verdes Library District, petitioned the trial court for a writ of mandamus. The trial court granted judgment for plaintiff, compelling defendant to reinstate certain fringe benefits for long-term employees, which defendant had purported to eliminate by resolution of August 14, 1975. Defendant appeals.

The three benefits in question were: (1) a longevity salary increase, equal to 2 percent of base pay, awarded at the end of the 9th, 12th, 15th and 18th years of service; (2) a 5th week of vacation for full-time professional employees after 10 years of continuous service; and (3) a 4-month fully paid sabbatical for librarians at the end of each 6 years of full-time service.

These benefits were included in the library district's "Personnel Policies and Procedures" adopted by the board of library trustees on July 27, 1966, and have been implemented as a matter of practice for a long period of time. During "meet and confer" sessions (see Gov. Code, § 3505 et seq.) for the fiscal year 1975-1976, defendant offered the employees a 6 to 6.6 percent salary increase conditioned on the elimination of the three benefits in question. No memorandum of understanding between the parties was reached. On August 14, 1975, the defendant unilaterally adopted the 6 to 6.6 percent salary increases, together with the elimination of the benefits as to all employees who had not yet completed the specific conditions precedent to qualify for the benefits.

The trial court ruled that defendant did not have the power unilaterally to eliminate these benefits as to those employees who had been working towards them prior to August 14, 1975. In its memorandum opinion the trial court stated:

"Respondent has implemented these benefits as a matter of practice over a long period of time. The fact that it has included each of them in

its official declaration of policy pertaining to employment compels the conclusion that they constitute significant incentives for respondent's employees. The provisions describing each benefit clearly exposes them as inducements to the employees to remain in the service of the Library District. Consequently these benefits are maturing emoluments for continued service.

"The longevity merit salary raises are awarded automatically, and without any attendant labor negotiations. Because the raise is implemented only on the condition that the employee serve a stipulated term, the raise is deferred compensation for past services satisfactorily performed.

"Vacation time is a common term of employment. Here, the 'fifth week' is earned for ten years of continuous professional service. From the employee's perspective, every day on the job prior to ten years is an investment towards the realization of the promised future compensation.

"The same conclusion is compelled with respect to the promised sabbatical—however exotic that form of compensation may appear. As a matter of fact, the pertinent provisions dealing with the sabbatical leave in the respondent's Personnel Policies and Procedures provides that the employee is 'entitled' to it upon meeting the specified conditions. For the employee who has invested substantial time towards this promised benefit the withdrawal of it constitutes a denial of expected compensation. In fact, an outright termination of any one of these benefits penalizes the employee who has contributed continuous service in anticipation of receiving the promised compensation, and allows the respondent to reap the advantage of continued earned service that it intended to induce, without ever fulfilling its declared and implicit obligation."

The trial court therefore granted a writ of mandate compelling defendant to reinstate the benefits for employees who had performed service prior to August 14, 1975.

Defendant contends (1) "The Longevity Benefits in Question do not Constitute Fundamental Vested Rights of Employees of Appellant District" and (2) "Even if the Longevity Benefits in Question were Fundamental Vested Rights, they were Adequately Offset by the Salary Increase Approved by Appellant Board for Fiscal Year 1975-76." We hold these contentions to be without merit.

## Discussion

Defendant's basic argument is that the terms and conditions relating to employment by a public agency are strictly controlled by statute or ordinance rather than by ordinary contract standards. (*Markman v. County of Los Angeles,* 35 Cal.App.3d 132, 134-135 [110 Cal.Rptr. 610].)[1]

■ Nevertheless, the cases also recognize that "[a]lthough there may be no right to tenure, public employment gives rise to certain obligations which are protected by the contract clause of the Constitution, including the right to the payment of salary which has been earned." (*Kern v. City of Long Beach,* 29 Cal.2d 848, 852-853 [179 P.2d 799].)

The courts have recognized, for instance, that an employee begins earning pension rights from the day he starts employment. "While payment of these benefits is deferred, and is subject to the condition that the employee continue to serve for the period required by the statute, the mere fact that performance is in whole or in part dependent upon certain contingencies does not prevent a contract from arising, and the employing governmental body may not deny or impair the contingent liability any more than it can refuse to make the salary payments which are immediately due." (*Id.,* at p. 855; see *In re Marriage of Brown,* 15 Cal.3d 838, 846-847 [126 Cal.Rptr. 633, 544 P.2d 561]; see also *Waite v. Waite,* 6 Cal.3d 461, 472-473 [99 Cal.Rptr. 325, 492 P.2d 13].)

This principle is not limited simply to pension cases. (See *Youngman v. Nevada Irrigation Dist.,* 70 Cal.2d 240, 248 [74 Cal.Rptr. 398, 449 P.2d 462] (practice of granting annual wage increases); *Frates v. Burnett,* 9 Cal.App.3d 63, 69 [87 Cal.Rptr. 731] (rules and regulations adopted by board of education are a part of a teacher's employment contract); *Ivens v. Simon,* 212 Cal.App.2d 177, 182 [27 Cal.Rptr. 801] (adoption of five-step classification and pay plan); *Healdsburg Police Officers Assn. v. City of Healdsburg,* 57 Cal.App.3d 444, 451 [129 Cal.Rptr. 216] (departmental manual provided for a hearing).)

■ While the three benefits in question may not be as important to an employee as a pension, in determining whether they are fundamental the court is to evaluate "the effect of it in human terms and the importance of it to the individual in the life situation." (*Bixby v. Pierno,* 4 Cal.3d 130,

---

[1]Amicus also cites a line of cases beginning with *Butterworth v. Boyd,* 12 Cal.2d 140, 150 [82 P.2d 434, 126 A.L.R. 838].

144 [93 Cal.Rptr. 234, 481 P.2d 242].) We think the trial court was correct in the circumstances of this case in concluding that the benefits were important to the employees, had been an inducement to remain employed with the district, and were a form of compensation which had been earned by remaining in employment. To the librarian who has worked five and one-half years toward the right to take a sabbatical at the end of six years, or the long-term employee who has been working toward entitlement to five weeks of vacation after ten years of service, it would be grossly unfair to allow defendant to eliminate such benefits and reap the rewards of such long-time service without payment of an important element of compensation for such service.

Defendant's reliance upon *Markman v. County of Los Angeles, supra,* 35 Cal.App.3d 132, and *Miller v. State of California,* 18 Cal.3d 808 [135 Cal.Rptr. 386, 557 P.2d 970], is misplaced. In *Markman* an employee sought compensation for many hours of overtime for which he had been unable to take equivalent time off. The court upheld the denial of compensation based on the ordinances *in effect during the period of employment,* which provided that compensating time off must be taken in the next succeeding year or be lost. *Markman* thus does not involve the elimination of benefits previously provided. *Miller v. State of California, supra,* involved the lowering of the mandatory retirement age for state employees from 70 to 67. The employee argued that he had a vested right to work to age 70 and thus qualify for a larger pension. The court held there was no vested right to work beyond the mandatory retirement age, and it distinguished the cases in which pension rights had been eliminated or reduced.

Defendant's next argument is that the benefits in question were adequately "offset" by the salary increase approved for the fiscal year 1975-1976. The pension cases have adopted the principle that vested contractual pension rights may be modified in order to maintain the flexibility and integrity of the pension system. To be sustained as reasonable, such modifications must "bear some material relation to the theory of a pension system and its successful operation, and changes in a pension plan which result in disadvantage to employees should be accompanied by comparable new advantages." (*Allen v. City of Long Beach,* 45 Cal.2d 128, 131 [287 P.2d 765]; *Frank v. Board of Administration,* 56 Cal.App.3d 236, 243 [128 Cal.Rptr. 378]; *Amundsen v. Public Employees' Retirement System,* 30 Cal.App.3d 856, 859 [106 Cal.Rptr. 759].) The general salary increase in the instant case does not satisfy these principles.

First, as a question of fact, the trial court held that defendant had failed to prove the equivalency of the benefits and the salary increase. This finding is supported by substantial evidence and therefore binding on appeal. The court was not satisfied as to the actuarial basis of defendant's computation, which involved an estimate of the cost of the fringe benefits over the next five years. The calculation of the cost of the longevity pay raises also did not take into account future general pay raises, or even the 1975-1976 raise.

Furthermore, the court was not satisfied that the general salary increase could compensate in principle for the loss of a fifth week of vacation or the right to take a sabbatical leave. They constituted entirely different types of compensation. (See *Frank* v. *Board of Administration, supra,* 56 Cal.App.3d at p. 244.) In addition, the allegedly compensating salary increase fell unequally on different classes of employees, since only professionals (librarians) were entitled to the sabbatical and fifth week of vacation. Also, the employee who had already worked, say, nine years, or five and one-half years, lost much more benefits than one who had only worked one year toward qualifying for the longevity benefits, but both received the same salary increase. (Cf. *Amundsen* v. *Public Employees' Retirement System, supra,* 30 Cal.App.3d at p. 859.) There was no evidence that the financial integrity of the district was at stake.

The judgment is affirmed.

Kaus, P. J., and Stephens, J., concurred.