[No. H009727. Sixth Dist. Dec. 30, 1992.]

ZEPH THORNING et al., Plaintiffs and Appellants, v.
HOLLISTER SCHOOL DISTRICT, Defendant and Respondent.

COUNSEL

Harray & Pierce, Michael P. Masuda, Noland, Hamerly, Etienne & Hoss and Stephen W. Pearson for Plaintiffs and Appellants.

Breon, O'Donnell, Miller, Brown & Davis, Nancy B. Bourne and Keith V. Breon for Defendant and Respondent.

OPINION

**PREMO, J.**—Plaintiffs Zeph Thorning and Robbie Crump, retired board members of defendant Hollister School District (hereafter, District), sought a

writ of mandate directing District to pay for postretirement continuation of health benefits after District reversed an earlier authorization and suspended payment. The trial court sustained a demurrer to their second amended petition, and dismissed the action. Thorning and Crump appeal, contending that they had a vested right to the benefits, and that that right was secured by the Constitution and laws of the United States. We agree and reverse.

## FACTS

Appellants were first elected to the Hollister School District Board of Trustees in 1977, and won additional four-year terms in 1981 and 1985. Before the next election, consolidated in 1990, appellants decided to retire. Their successors were elected on November 6, 1990, to terms beginning that December.

The last regular meeting of the board during appellants' term was held on November 27, 1990. Crump was absent. The board with Thorning participating voted three to one to continue payment for health and welfare benefits for Thorning and Crump for the next ten years.

The new board held its first regular meeting on December 11, 1990. It reopened discussion of the continued benefits, and voted to suspend payment. Later, appellants submitted and District denied a claim for payment pursuant to Government Code section 905.[1]

Appellants filed this action for a writ of mandate (Code Civ. Proc., § 1085) and for damages for violation of their civil rights (42 U.S.C. § 1983). The trial court sustained demurrers to the first amended complaint (with leave to amend) and to the second amended complaint (without leave to amend).

In ruling on the second demurrer, the trial court found that appellants "failed to state a cause of action sufficient for the issuance of a writ of mandate and have further failed to state a cause of action based on a violation of 42 USC section 1983 in that the retiree health benefits at issue in this action are not vested rights as a matter of the law . . . ." The action was dismissed on March 4, 1992. This appeal ensued.

## CONTENTIONS ON APPEAL

Appellants contend that the November 27 action of the board conferred upon them benefits which vested upon acquisition and which District could

---

[1]Further statutory references are to the Government Code unless otherwise stated.

not unilaterally terminate. They further assert that since this right to continued health benefits is vested, it is constitutionally protected, and its deprivation under color of state law violates 42 United States Code section 1983.

## SCOPE OF REVIEW

█ The appellate court's "only task in reviewing a ruling on a demurrer is to determine whether the complaint states a cause of action. Accordingly, we assume that the complaint's properly pleaded material allegations are true and give the complaint a reasonable interpretation by reading it as a whole and all its parts in their context. [Citations.]" (*Garcia* v. *Superior Court* (1990) 50 Cal.3d 728, 732 [268 Cal.Rptr. 779, 789 P.2d 960].)

The reviewing court may consider all documents which have been determined by the trial court as appropriate for judicial notice, including resolutions, reports and other official acts of a legislative body. (*Long Beach Equities, Inc.* v. *County of Ventura* (1991) 231 Cal.App.3d 1016, 1024.) █ Official minutes of meetings of a legislative body may be judicially noticed. (*Social Services Union* v. *City and County of San Francisco* (1991) 234 Cal.App.3d 1093, 1098 [285 Cal.Rptr. 905].)

## PETITION FOR A WRIT OF MANDATE

█ "Mandamus is issued 'to compel the performance of an act which the law specially enjoins . . . .' (Code Civ. Proc., § 1085.) Two requirements are essential: a clear, present and usually ministerial duty upon the part of the respondent, and a clear, present and beneficial right in the petitioner to performance of that duty. [Citation.] Mandamus is an appropriate remedy to compel the exercise of discretion by a government officer, but does not lie to control the exercise of discretion unless under the facts, discretion can be exercised in only one way. [Citations.]" (*Pacific Bell* v. *California State & Consumer Services Agency* (1990) 225 Cal.App.3d 107, 118 [275 Cal.Rptr. 62].)

█ The act which appellants sought to compel District to perform was to approve payment of continued health benefits. If District had an official duty to pay the claim for continued benefits, the act authorizing payment is merely a ministerial act, and mandamus is an appropriate remedy. (*A.B.C. Federation of Teachers* v. *A.B.C. Unified Sch. Dist.* (1977) 75 Cal.App.3d 332, 341-342 [142 Cal.Rptr. 111].)

█ The question whether District could discontinue the benefits is an issue of first impression. The only published authority is a 1984 opinion of

the California Attorney General, which focuses on subdivision (b) of section 53201.[2] The opinion concludes: "A school district presently providing health and life insurance benefits to present and eligible former board members may not, in the absence of constitutional justification, discontinue such benefits (a) during the current terms of board members or (b) as to former board members who had already qualified for lifetime benefits, but may discontinue such benefits (c) upon the commencement of new terms of current board members or (d) as to future new board members." (67 Ops.Cal.Atty.Gen. 510 (1984).) Although an official interpretation of statute by the Attorney General is not controlling, it is entitled to great respect. (*Sonoma County Bd. of Education* v. *Public Employment Relations Bd.* (1980) 102 Cal.App.3d 689, 699 [163 Cal.Rptr. 464].)

District began providing health and welfare benefits for its board members in 1978 pursuant to section 53201, subdivision (a), which then allowed legislative bodies of local agencies to provide such benefits for their officers, employees, and retired employees. In 1979, the Legislature added "and retired members of the legislative body" to the list of beneficiaries. (See Historical Note, 36A West's Ann. Gov. Code (1983 ed.) § 53201, p. 81.)

Several amendments later, in 1985 section 53201, subdivision (b) attained its present form: "The legislative body of a local agency may also provide for the continuation of any health and welfare benefits for the benefit of former elective members of the legislative body who (1) served in office after January 1, 1981, and whose total service at the time of termination is not less than 12 years, or (2) have completed one or more terms of office, but less than 12 years, and who agree to and do pay the full costs of the health and welfare benefits."[3] (See Stats. 1985, ch. 141, § 1, p. 1011.)

District's policy on health benefits for retired board members was adopted on April 26, 1988. Policy No. 9250(a), "Bylaws of the Board," stated: "Any members retiring from the Board after at least one full term shall have the option to continue the health and welfare benefits program if coverage is in effect at time of retirement, except that Board members who have served less

---

[2] The version of subdivision (b) of section 53201 which was in effect in 1984 provided only for retirees who had served one or more terms and at least twelve years. It read: "The legislative body of a local agency may also provide for the continuation of any health and welfare benefits for the benefit of former elective members of the legislative body who serve in office after January 1, 1981, and whose total service at the time of termination of service is not less than 12 years." (See Stats. 1982, ch. 64, § 1, p. 199.) Since we are concerned with retirees who fit these criteria, which are also contained in the present statute and in the policy declaration, the opinion of the Attorney General is relevant.

[3] The 1990 amendment of section 53201 adding subdivision (c) is not applicable to this case.

than twelve (12) years but at least one term shall pay the full cost of health and welfare benefits coverage."

In a revision adopted on July 17, 1990, the subsection covering retired board members became: "Any members retiring from the Board after at least one term *may* continue the health and welfare benefits program at their own expense if coverage is in effect at the time of retirement. [¶] The Board *may* authorize payment of premiums for retired members who have served twelve (12) years or more." (Italics added.)

█ In their petition, appellants alleged a number of facts to establish that the right to the benefits had vested. Correctly, as we shall see, although inconsistently with their contention on appeal, they alleged that the action of the board on November 27 was "not the granting of the benefits" because the benefits had been "previously granted as official Board policy." That action was merely "a consent item authorizing payment for the benefits . . . ." Appellants asserted that these benefits constituted both an inducement for their continued service on the board and deferred compensation. In addition, they alleged they relied on the promise both in continuing to serve and in deciding to retire from the board after serving for 12 years.

Respondent counters that appellants had no vested right to paid health benefits as a matter of law because public employees have a vested right to compensation only when it is offered as an inducement for continued public service. Respondent reasons that since the benefits were granted at the end of appellants' term of office, and were for services previously rendered, the benefits were not vested rights.

█ Terms and conditions relating to public employment are controlled by statute or ordinance rather than by ordinary contract standards. (*Markman v. County of Los Angeles* (1973) 35 Cal.App.3d 132, 134-135 [110 Cal.Rptr. 610].) However, elements of compensation for an elected officer become contractually vested upon acceptance of employment. (*Betts* v. *Board of Administration* (1978) 21 Cal.3d 859, 863 [148 Cal.Rptr. 158, 582 P.2d 614].) "[S]alaries of elected state officers may not be reduced during their term of office." (Cal. Const., art. III, § 4.) █ School board members are state officers. (*People* v. *Elliott* (1953) 115 Cal.App.2d 410, 415 [252 P.2d 661].)

█ While the policy authorizing the board to continue postretirement health and welfare benefits for long-term board members was not in effect when appellants were elected to office in 1985, the policy was adopted during that term. "An employee's contractual pension expectations are

measured by benefits which are in effect not only when employment commences, but which are thereafter conferred during the employee's subsequent tenure." (*Betts* v. *Board of Administration, supra*, 21 Cal.3d at p. 866.)

Respondent contends that the 1990 policy declaration which made payment of continuing benefits discretionary with District should control. However, "[i]f salary benefits are diminished by the Legislature during a judge's term or during the unexpired term of a predecessor judge, the judge is nevertheless entitled to the contracted-for benefits during the remainder of such term." (*Olson* v. *Cory* (1980) 27 Cal.3d 532, 539 [178 Cal.Rptr. 568, 636 P.2d 532].) Judges are state officers. (*Id.* at p. 543.)

Appellants on November 27, 1990, were finishing out terms during which the policy declaration providing for payment for the benefits came into effect. Elements of compensation conferred during the term of public office become contractually vested. (*Betts* v. *Board of Administration, supra*, 21 Cal.3d at p. 866.) Consequently, we conclude that the controlling declaration of policy is that which was adopted in 1988.

Respondent further contends that the right to continued health and welfare benefits was not similar to a pension benefit, but was a gratuity because it was granted after service was completed. However, "in Betts v. Board of Administration [*sic*] [*supra*, 21 Cal.3d at page 863], it was held that the elements of compensation (e.g., retirement benefits) for a public office (e.g., State Treasurer) become contractually vested upon acceptance of employment. [Citation.] Further, such contractual interests include not only those in effect upon commencement of employment, but also those conferred during the employee's tenure. [Citations.] In our view, therefore, health and life insurance benefits provided pursuant to an official declaration of policy may not be discontinued during the current terms of board members." (67 Ops.Cal.Atty.Gen., *supra*, at p. 512.)

The principle that an employee begins earning pension rights from the day he starts employment is not limited simply to pension cases but extends to other types of benefits. (*California League of City Employee Associations* v. *Palos Verdes Library Dist.* (1978) 87 Cal.App.3d 135, 139 [150 Cal.Rptr. 739], hereafter *California League.*)

In *California League*, the court determined that the three benefits in question, a longevity salary increase, extra vacation after ten years of continuous service, and a paid sabbatical after each six years of full-time service, were fundamental benefits (87 Cal.App.3d at p. 139) and "maturing emoluments for continued service" (*id.* at p. 138).

"[I]n determining whether they are fundamental the court is to evaluate 'the effect of it in human terms and the importance of it to the individual in

the life situation.' [Citation.]" (*California League, supra,* 87 Cal.App.3d at pp. 139-140.) The court found it significant that the three benefits were included in the district's official declaration of policy pertaining to employment, that they "were important to the employees, had been an inducement to remain employed with the district, and were a form of compensation which had been earned by remaining in employment." (*Id.* at p. 140.)

The benefits involved in the instant case share these qualities. They were included in District's official declaration of policy pertaining to remuneration and other benefits for board members. They were of importance to the board members as an inducement for their continued service on the board and as a factor in their decision to retire. Thus, under the criteria of *California League,* the benefits are fundamental and District may not unilaterally terminate them. (87 Cal.App.3d at p. 139.)

▮ Whether or not the benefits vested, however, respondent asserts that the policy declaration is silent on who pays for the continued benefits. While the policy provides that "[t]he District shall pay the cost of all premiums required for Board members electing to participate in the District health and welfare benefits program," respondent claims the policy "nowhere expressly authorizes the payment of health benefits for retirees, much less compels such Board action."

To answer this question, we look to the language of the 1988 policy declaration and the statutes on which it is based.

Policy No. 9250(a) is divided into four sections. Three sections are pertinent in this case: "*Health and Welfare Benefits* [.] Board members may participate in the health and welfare benefits program provided for the employees of the District. [¶] *Full Contribution by the District* [.] The District shall pay the cost of all premiums required for Board members electing to participate in the District health and welfare benefits program. [¶] *Retired Board Members* [.] Any members retiring from the Board after at least one full term shall have the option to continue the health and welfare benefits program if coverage is in effect at time of retirement, except that Board members who have served less than twelve (12) years but at least one term shall pay the full cost of health and welfare benefits coverage. [¶] The insurance shall provide full benefits commensurate with that provided to current Board members for retired Board members up to the age at which they become eligible for Medicare/Medicaid, and after that shall cover only those eligible expenses not covered by Medicare or Medicaid, or other health

insurance programs. [¶] The Superintendent is directed to negotiate the coverage indicated above with the insurance carrier."

Reading these sections together, it appears that District intended to allow to long-term retired board members the option of continuing the program at District's expense. The only stated exception to "full contribution by the district" falls on board members who have served less than 12 years but at least 1 term.

 "Under the familiar rule of construction, *expressio unius est exclusio alterius*, where exceptions to a general rule are specified by statute, other exceptions are not to be implied or presumed. [Citations.] This rule, of course, is inapplicable where its operation would contradict a discernible and contrary legislative intent. [Citation.]" (*Wildlife Alive* v. *Chickering* (1976) 18 Cal.3d 190, 195 [132 Cal.Rptr. 377, 553 P.2d 537].) Therefore, we turn to the enabling legislation to determine if this reading of the policy declaration is consistent with the legislative intent of the statutory scheme.

Policy No. 9250(a) declares its "Legal Reference" for the health and welfare benefits to be Government Code sections "53200-53209—Group insurance, especially." Contained in these sections are statements indicating a generous legislative intent in 1957 and in 1974 when a number of amendments to the statutory scheme were made. In 1957, the Legislature declared its purpose was to broaden the classes of employees eligible for benefits and to liberalize restrictions on the extent of employer contributions permitted. (§ 53209.)

In 1974, the Legislature stated that it wished "to make it clear that the Legislature intended that legislative bodies be able to pay for insurance or health benefits or health and welfare benefits . . . under the provisions of Section[] 53205 . . . ." (§ 53205.16.)

Section 53205 allows the legislative body to "authorize payment [from funds under its jurisdiction] of all, or such portion as it may elect, of the premiums, dues, or other charges for health and welfare benefits of . . . former elective members specified in subdivision (b) of Section 53201 . . . ."4

As we have noted, section 53201, subdivision (a), allows a legislative body, such as the Hollister School District Board of Trustees (§ 53200,

---

4Section 53201 provides, in pertinent part: "(a) The legislative body of a local agency, subject to such conditions as may be established by it, may provide for any health and welfare benefits for the benefit of its officers, employees, retired employees, and retired members of the legislative body who elect to accept the benefits and who authorize the local agency to deduct the premiums, dues, or other charges from their compensation, to the extent that such

subds. (a), (c)), to provide health and welfare benefits for active and retired employees and officers and retired elective members of the body. It may require the beneficiaries to pay for these benefits or may authorize payment "from funds under the jurisdiction of the local agency as permitted by Government Code section 53205." Subdivision (b) allows payment for the continuation of these benefits for retiring long-term elective members.

These statutes are a clear statement that the Legislature intended to allow paid postretirement benefits for long-term elective public servants. Since under our interpretation the 1988 policy declaration is consistent with the legislative intent seen above, we reject respondent's assertion that the policy declaration does not provide for payment for postretirement benefits.

In light of this conclusion, the trial court erred in finding "that the retiree health benefits at issue in this action are not vested rights as a matter of the law . . . ."

### DEPRIVATION OF RIGHTS

Appellants additionally contend that the court erred in dismissing their claim alleging a deprivation of rights secured by the Constitution and laws under 42 United States Code section 1983.[5]

According to authority collected and restated in *Bullock* v. *City and County of San Francisco* (1990) 221 Cal.App.3d 1072, 1088 [271 Cal.Rptr. 44], " '[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.' [Citation.]"

Furthermore, California state courts should apply federal law to determine whether a complaint pleads a cause of action under section 1983 sufficient to

---

charges are not covered by payments from funds under the jurisdiction of the local agency as permitted by Government Code Section 53205.

"(b) The legislative body of a local agency may also provide for the continuation of any health and welfare benefits for the benefit of former elective members of the legislative body who (1) served in office after January 1, 1981, and whose total service at the time of termination is not less than 12 years, or (2) who have completed one or more terms of office, but less than 12 years, and who agree to and do pay the full costs of the health and welfare benefits."

[5]As relevant here, 42 United States Code section 1983 provides: "Every person who, under color of any statute, . . . custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

survive a general demurrer. Such complaints should be construed liberally, and to uphold a dismissal it must appear to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proved. (*Bullock* v. *City and County of San Francisco, supra,* 221 Cal.App.3d at p. 1088.) "In line with California practice, federal law requires that the factual allegations of the complaint be accepted as true. [Citation.] Unlike California, federal courts reviewing a dismissed section 1983 claim look to the entire record assembled in the trial court. [Citations.]" (*Ibid.*)

Appellants satisfactorily alleged deprivation of a right secured by the Constitution by persons acting under cover of state law.

"[P]ension rights are obligations protected by the contract clause of the federal and state Constitutions (U.S. Const., art. I, § 10, cl. 1; Cal. Const., art. I, § 9). [Citations.]" (*United Firefighters of Los Angeles City* v. *City of Los Angeles* (1989) 210 Cal.App.3d 1095, 1102 [259 Cal.Rptr. 65].)

Respondent's actions in suspending payment for the continued health and welfare benefits were based upon the inapplicable 1990 revised policy declaration, and section 53200 et seq. Therefore, refusal to pay for the benefits was an act under color of state law. "[A]cts of the individual members of the Retirement Board, in preventing payment to be made to the plaintiff of pension benefits which he accrued over his many years of service in county government constitute a deprivation of his Civil Rights since as an accrued and vested pension, it would be a property right, the taking of which would be a denial of Due Process. [Citation.]" (*Stuart* v. *Flynn* (W.D.Pa. 1974) 380 F.Supp. 424, 426.)

## DISPOSITION

The judgment is reversed. Appellants are awarded costs on appeal.

Cottle, Acting P. J., and Elia, J., concurred.

A petition for a rehearing was denied January 29, 1993, and respondent's petition for review by the Supreme Court was denied March 18, 1993. Baxter, J., was of the opinion that the petition should be granted.