[No. E021207. Fourth Dist., Div. Two. Nov. 16, 1998.]

SAN BERNARDINO PUBLIC EMPLOYEES ASSOCIATION, Plaintiff and Respondent, v.
CITY OF FONTANA et al., Defendants and Appellants.

1216

COUNSEL

Best, Best & Krieger, Jack B. Clarke, Jr., Bradley E. Neufeld and Kevin T. Collins for Defendants and Appellants.

Liebert, Cassidy & Frierson, Arthur A. Hartinger and Alison C. Neufeld as Amici Curiae on behalf of Defendants and Appellants.

Olins, Foerster & Hayes, Barbara J. Ginsberg and Dennis Hayes for Plaintiff and Respondent.

OPINION

**WARD, J.**—The City of Fontana (City) appeals from the grant of the petition for writ of mandate brought by San Bernardino Public Employees Association (SBPEA). SBPEA's petition, brought under Code of Civil Procedure section 1085, challenged various terms and conditions of employment under memoranda of understanding (MOU) negotiated with the City. The City, supported by amici curiae,[1] contends the trial court erred in concluding that the employees represented by the SBPEA possessed vested, contractual rights to personal leave accrual, longevity pay, and retirement health benefits, and such benefits could not be altered through collective bargaining. We agree, and we therefore reverse the judgment.

### FACTS AND PROCEDURAL BACKGROUND

The SBPEA is a labor organization that represents certain employees of the City for purposes of bargaining under the Meyers-Milias-Brown Act (the Act) (Gov. Code, § 3500 et seq.) In 1995, the City and three bargaining units, the City Hall Unit, the City Yard Unit, and the Police Benefit Association, all acting through and represented by SBPEA, entered into new MOU's.

Before 1993, the MOU's for the three bargaining units all provided for longevity pay, leave accrual increases based on longevity, and paid retiree medical and dental insurance benefits (sometimes referred to hereafter as the longevity-based benefits). Those benefits had been agreed upon by the three bargaining units through the collective bargaining process.

---

[1] The request of 68 individual towns and cities in the State of California to appear in this action as amici curiae is granted.

During negotiations for the 1995-1997 MOU's,[2] the City proposed to reduce accrual of personal leave, longevity pay, and retiree insurance benefits. The City warned that if the membership rejected the proposal to reduce those benefits, the City would implement a 7 percent reduction in the City's contribution to PERS (Public Employees' Retirement System (Gov. Code, § 20000 et seq.)) retirement. The SBPEA took the position that the longevity-based benefits were vested and could not be bargained away. However, the members of the three bargaining units ratified the MOU's that reduced the longevity-based benefits. The new MOU's reduced the personal leave accrual rate for employees having 10 or more years of service and changed longevity pay from a percentage of salary payable annually to a fixed amount payable only in the year of service the employee became eligible. Retirement insurance benefits were to be renegotiated.

On October 31, 1995, the SBPEA filed a petition for writ of mandate against the City and the city manager seeking to set aside provisions in the MOU's relating to longevity pay, personal leave accrual, and retiree medical insurance. After conducting a hearing, the trial court granted the petition. The trial court found that personal leave and longevity pay benefits were fundamental vested rights that could not be bargained away through the collective bargaining process.

The 1990-1993 MOU's stated, "The terms and conditions of this Agreement shall be applicable to all employees set forth in Appendix A commencing July 1, 1990 and ending June 30, 1993." The 1990-1993 MOU's further stated, "Unless otherwise specifically changed or modified by this Memorandum of Understanding, all prevailing benefits existing from previous agreements between the parties and approved by the City Council shall be maintained at current levels."

DISCUSSION

I. *Standard of Review*

This case involves a question of law subject to de novo review on appeal. (See., e.g., *Evans* v. *Unemployment Ins. Appeals Bd.* (1985) 39 Cal.3d 398, 407 [216 Cal.Rptr. 782, 703 P.2d 122].)

II. *Personal Leave and Longevity Pay Benefits Are Conditions of Employment Subject to the Collective Bargaining Process*

The City contends the trial court erred in concluding that personal leave and longevity pay benefits were fundamental rights that could not be

---

[2]The negotiations extended over 3½ months and consumed 100 hours, with 50 to 100 proposals and counterproposals being submitted.

bargained away through the collective bargaining process. We first review the role of collective bargaining in public employment.

### A. The Meyers-Milias-Brown Act

The Act (Gov. Code, § 3500 et seq.) controls collective bargaining between public employers and their employees. The purpose of the Act is to "promote full communication between public employers and their employees by providing a reasonable method of resolving disputes regarding wages, hours, and other terms and conditions of employment between public employers and public employee organizations." (Gov. Code, § 3500.) To implement that purpose, employee collective bargaining units have the authority to represent their employees in "all matters relating to employment conditions and employer-employee relations, including, but not limited to, wages, hours, and other terms and conditions of employment, . . ." (Gov. Code, § 3504; *Relyea v. Ventura County Fire Protection Dist.* (1992) 2 Cal.App.4th 875, 880 [3 Cal.Rptr.2d 614].)

The Act requires public agencies to negotiate exclusively with the collective bargaining units. Once an MOU has been negotiated, it is reviewed and approved by the governing body of the public entity and the membership of the bargaining unit. (Gov. Code, § 3505.) When an MOU has expired, however, the parties may negotiate changes to its provisions. (Gov. Code, § 3505.1.)

An MOU is binding on both parties for its duration. In *Glendale City Employees' Assn., Inc. v. City of Glendale* (1975) 15 Cal.3d 328 [124 Cal.Rptr. 513, 540 P.2d 609] (hereafter *City of Glendale*), the court explained the operation of the Act: "Section 3505.1 . . . provides that if agreement is reached it should be reduced to writing and presented to the governing body of the agency for determination. This statutory structure necessarily implies that an agreement, *once approved by the agency, will be binding.* The very alternative prescribed by the statute—that the memorandum 'shall not be binding' except upon presentation 'to the governing body or its statutory representative *for determination,*'—manifests that *favorable* 'determination' engenders a binding agreement." (*Id.* at p. 336, original italics.)

In *Relyea v. Ventura County Fire Protection Dist., supra,* 2 Cal.App.4th 875, the court rejected an argument that the Act permits individual employees to negotiate the terms of their employment with public employers. The court explained, "Appellant's interpretation of the [Act] would subvert the legislative scheme of providing for a structured collective bargaining system by requiring an employer to negotiate over working conditions with any

number of employees. This could complicate employer-employee relations to the extent of undermining collective bargaining and its benefits, thereby defeating the Act's goals of ensuring stability in labor management relations and the right of employees to join and be represented by an employee organization. (§ 3500.) [¶] Moreover, certain basic principles which govern a collective bargaining system contradict appellant's view that individual bargaining rights do not impede collective rights. Normally the employer has the duty to negotiate only with the chosen employee representative. [Citation.] It is also a fundamental principle that a member of an employee bargaining unit is bound by the terms of a valid collective bargaining agreement, though he is not formally a party to it and may not even belong to the union which negotiated it. [Citation.] Individual contracts, no matter what the circumstances which justify their execution, may not interfere with the terms of the collective agreement. [Citation.]" (*Id.* at p. 882.)

B. *The Contractual Protection for Pension Rights Does Not Extend to Vacation Leave and Longevity Pay Benefits Negotiated Under an MOU*

█ As a general rule, the terms and conditions of public employment are controlled by statute or ordinance rather than by contract. (*California League of City Employee Associations* v. *Palos Verdes Library Dist.* (1978) 87 Cal.App.3d 135, 139 [150 Cal.Rptr. 739] (hereafter *California League*).) However, " 'public employment gives rise to certain obligations which are protected by the contract clause of the Constitution, including the right to the payment of salary which has been earned.' " (*Ibid.*, citing *Kern* v. *City of Long Beach* (1947) 29 Cal.2d 848, 852-853 [179 P.2d 799].) Such obligations include pension rights.

In *Kern*, the court explained the nature of a public employee's pension rights: "It is true that an employee does not earn the right to a full pension until he has completed the prescribed period of service, but he has actually earned some pension rights as soon as he has performed substantial services for his employer. [Citations.] He is not fully compensated upon receiving his salary payments because, in addition, he has then earned certain pension benefits, the payment of which is to be made at a future date. While payment of these benefits is deferred, and is subject to the condition that the employee continue to serve for the period required by the statute, the mere fact that performance is in whole or in part dependent upon certain contingencies does not prevent a contract from arising, and the employing governmental body may not deny or impair the contingent liability any more than it can refuse to make the salary payments which are immediately due." (*Kern* v. *City of Long Beach, supra,* 29 Cal.2d at p. 855, see also *Miller* v. *State of California* (1977) 18 Cal.3d 808, 814 [135 Cal.Rptr. 386, 557 P.2d 970].)

Under the California Constitution, a "law impairing the obligation of contracts may not be passed." (Cal. Const., art. I, § 9.) Similarly, under the federal Constitution, "No state shall . . . pass any . . . law impairing the obligation of contracts . . . ." (U.S. Const., art. I, § 10, cl. 1.) The contract clauses of the state and federal Constitutions limit the power of public entities to modify their own contracts with other parties. (*Board of Administration* v. *Wilson* (1997) 52 Cal.App.4th 1109, 1130 [61 Cal.Rptr.2d 207].)

In *California League, supra,* 87 Cal.App.3d 135, the court held that certain employee benefits were entitled to protection under the constitutional contract clauses. In that case, a library district unilaterally eliminated certain fringe benefits for long-term employees, including a fifth week of vacation after ten years of service, a longevity salary increase, and a four-month paid sabbatical after six years of service. The library district took its action after "meet and confer" sessions under Government Code section 3505 et seq. had failed to lead to an MOU between the library district and the employee association. (87 Cal.App.3d at p. 137.) The court, relying substantially on *Kern,* held the fringe benefits had been important to the employees, had been an inducement for the employees to remain in service with the district, and were a form of compensation that had been earned by remaining in employment. Thus, the court concluded, the employees had fundamental vested rights to the benefits, not subject to unilateral termination by the employer. Moreover, a general salary increase did not offset the termination of the benefits, because the loss of benefits fell unequally on different classes of employees. (*California League, supra,* at p. 140; see also *Thorning* v. *Hollister School Dist.* (1992) 11 Cal.App.4th 1598 [15 Cal.Rptr.2d 91] [holding that retired school board members had a vested right to postretirement continuation of paid health benefits because those benefits were included in the school district's official declaration of policy pertaining to remuneration and other benefits for board members, and such benefits were important to the board members as an inducement for their continued service on the board and a factor in their decision to retire].)

In reaching its determination that the employees had vested rights in the longevity-based benefits, the trial court relied primarily on *California League.* The court in *California League* ruled that whenever benefits or conditions of employment are important to the employees, they acquire protection under the contract clause. The court's analysis leading to this conclusion is set forth in a single sentence: "While the three benefits in question may not be as important to an employee as a pension, in determining whether they are fundamental the court is to evaluate 'the effect of it in human terms and the importance of it to the individual in the life situation.'

(*Bixby* v. *Pierno*, 4 Cal.3d 130, 144 [93 Cal.Rptr. 234, 481 P.2d 242].)" (*California League, supra,* 87 Cal.App.3d at pp. 139-140.)

The *California League* court's reliance on *Bixby* is misplaced. *Bixby* merely established a rule of judicial review applicable to adjudicatory orders or decisions of public agencies. (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130 [93 Cal.Rptr. 234, 481 P.2d 242].) The case cannot fairly be read as establishing a new measure of substantive rights to be protected under the contract clause.

■ For purposes of the constitutional ban on the impairment of contracts, "[a] statute will be treated as a contract with binding obligations when the statutory language and circumstances accompanying its passage clearly '. . . evince a legislative intent to create private rights of a contractual nature enforceable against the State.'" (*Valdes* v. *Cory* (1983) 139 Cal.App.3d 773, 786 [189 Cal.Rptr. 212].) There can be no impairment of a contract by a change thereof effected with the consent of one of the contracting parties. (*Mulcahy* v. *Baldwin* (1932) 216 Cal. 517, 525 [15 P.2d 738].)

■ Here, the longevity-based benefits were provided for in collective bargaining agreements reached between the City and its bargaining groups. Those collective bargaining agreements, as implemented through previous MOU's, were of fixed duration. Once the MOU's expired under their own terms, the employees had no legitimate expectation that the longevity-based benefits would continue unless they were renegotiated as part of a new bargaining agreement. It has long been held that "public employees have no vested right in any particular measure of compensation or benefits, and that these may be modified or reduced by the proper statutory authority. [Citations.]" (*Butterworth* v. *Boyd* (1938) 12 Cal.2d 140, 150 [82 P.2d 434, 126 A.L.R. 838].)

In *Butterworth*, public employees contended that compulsory salary deductions to cover the cost of a medical insurance plan deprived them of due process of law. The *Butterworth* court responded that no public employee has a vested right in continued employment "except in so far as the right is conferred by statute or other valid regulation; that the employment is accepted under the terms and conditions fixed by law; and that one of the terms of the employment in the present case is the provision for the benefits of the health service system at the charge imposed therefor. The charter governs the salaries of city employees; by the amendment to the charter, in force at the time the municipal salaries were fixed for the current fiscal year,

the deduction was authorized and made accordingly." (*Butterworth* v. *Boyd, supra,* 12 Cal.2d at p. 150.) The court further held that "[i]f salaries can be reduced it is certainly clear enough that compensation provisions may be modified by substituting for a fraction thereof the valuable protection of comprehensive medical service." (*Ibid.*)

In *Vielehr* v. *State of California* (1980) 104 Cal.App.3d 392 [163 Cal.Rptr. 795], the court drew a distinction between retirement rights and employment rights, and held that only the former are entitled to contract clause protections. Thus, the court ruled that a statute reducing the amount of interest paid to public employees who withdrew their pension fund contributions upon leaving public service before retirement diminished a right of employment, not a right of retirement, and therefore the statute did not violate the contract clauses. (*Id.* at pp. 395-396; see also *Miller* v. *State of California, supra,* 18 Cal.3d at pp. 815-817 [holding that changing mandatory retirement age did not impair any contractual obligation].)

We conclude that within the context of the Act, the collective bargaining process properly included such terms and conditions of employment as annual leave and longevity pay benefits. The benefits at issue could not have become permanently and irrevocably vested as a matter of contract law, because the benefits were earned on a year-to-year basis under previous MOU's that expired under their own terms.

Moreover, treating the annual leave and longevity pay benefits as vested would subvert the policies underlying the Act. Here, the SBPEA negotiated new MOU's that provided general salary increases and other benefits to the employees. The MOU's were negotiated with representatives of the recognized employee organizations and were submitted to and approved by the general membership of those organizations. Nonetheless, the SBPEA now attacks certain provisions of the MOU's although contending the employees were entitled to the concessions and advantages of the MOU's. The words of the California Supreme Court in *City of Glendale* bear repeating: "The Legislature designed the act . . . for the purpose of resolving labor disputes. (See Gov. Code, § 3500.) But a statute which encouraged the negotiation of agreements, yet permitted the parties to retract their concessions and repudiate their promises whenever they choose, would impede effective bargaining. Any concession by a party from a previously held position would be disastrous to that party if the mutual agreement thereby achieved could be repudiated by the opposing party. Successful bargaining rests upon the sanctity and legal viability of the given word." (*City of Glendale, supra,* 15 Cal.3d at p. 336.) The Act does not permit the employees to accept the

benefits of a collective bargaining agreement and reject less favorable provisions.

The SBPEA next argues that the city council acted unilaterally in adopting the MOU's. To support its position, it cites *Wright* v. *City of Santa Clara* (1989) 213 Cal.App.3d 1503 [262 Cal.Rptr. 395]. *Wright* is not on point. In that case, the court declared the City of Santa Clara exceeded its authority by enacting an ordinance which incorporated provisions of an agreement with its police officers' association. The agreement provided that an employee on temporary military leave must turn over his salary from military service or take approved time off to continue to receive his regular pay. The case did not turn on the City of Santa Clara's having taken a "unilateral" action; that was not even an issue in the case. Rather, the dispositive issue was that the challenged provision of the agreement directly conflicted with Military and Veterans Code section 395.01. Thus, the case merely stands for the proposition that a collective bargaining unit may not bargain away individual statutory or constitutional rights which flow from sources outside the collective bargaining agreement itself.

The SBPEA further argues that the right of representation is limited when the bargain reached significantly infringes on the constitutional or statutory rights of individual employees (*California Teachers' Assn.* v. *Parlier Unified School Dist.* (1984) 157 Cal.App.3d 174, 183 [204 Cal.Rptr. 20] [holding that a collective bargaining agreement could not waive benefits to which employees were statutorily entitled]; *Phillips* v. *State Personnel Bd.* (1986) 184 Cal.App.3d 651, 660 [229 Cal.Rptr. 502], disapproved on another ground in *Coleman* v. *Department of Personnel Administration* (1991) 52 Cal.3d 1102, 1123, fn. 8 [278 Cal.Rptr. 346, 805 P.2d 300] [holding that a collective bargaining agreement could not waive an employee's right to due process]), and the benefits at issue should be treated as constitutional rights of individual employees. Here, no outside statutory source gives the employees additional protection or entitlement to future benefits; therefore, the benefits are a proper subject of negotiation.

Although the case is not precisely on point, the reasoning of *Olson* v. *Cory* (1980) 27 Cal.3d 532 [178 Cal.Rptr. 568, 636 P.2d 532] is instructive. In that case, the court held a statute limiting annual cost-of-living increases in judicial salaries was unconstitutional as to any judge whose term began before the statute was enacted, but the statute could be applied to judges upon the commencement of new terms. The court explained, "A judge who completes one term during which he was entitled to unlimited cost-of-living increases and elects to enter a new term has impliedly agreed to be bound by

salary benefits then offered by the state for a different term." (*Id.* at p. 540.) By parity of reasoning, upon the expiration of an MOU, an employee who elects to continue employment with a public entity has impliedly agreed to be bound by the salary and benefit package provided in the new MOU. We note that the previous MOU explicitly stated that the terms and conditions of employment stated therein were to remain in force and effect during the term of that MOU.

We conclude that personal leave and longevity pay benefits are simply terms and conditions of employment subject to negotiation in the collective bargaining process.

### III. *The Matter of Retiree Medical and Dental Benefits Is Not Ripe for Review*

The petition for writ of mandate challenged provisions of the MOU's that stated, "During the period of July 1, 1995 through March 31, 1996, both the City and the PBA agree to meet and confer regarding the additional incremental costs of future benefits (i.e. beyond the amount currently budgeted for the expense during the 1995/96 fiscal year), including but not limited to: scope of coverage, funding sources, and the elimination of the City's participation in the PERS Health Care Plans. The City further agrees that it will not impose the elimination of retiree health benefits or modification of the current program, contingent upon the employee's agreement to fund the cost of the program in excess of the amount currently being funded by the City, from their compensation. The amount needed to fund this benefit shall be determined pursuant to an actuarial study." The trial court noted that neither the City nor the collective bargaining units had made any decision to affect retirement medical benefits. The court stated, "The court is aware that, as of the hearing in this case, the issue was unresolved. . . . Nonetheless, the Court feels it is appropriate to grant the petition compelling City to refrain from reducing or eliminating the retirement medical and dental benefits unless comparable offsetting benefits are provided in their stead."

A court may not issue rulings on matters that are not ripe for review. (*Pacific Legal Foundation* v. *California Coastal Com.* (1982) 33 Cal.3d 158, 171 [188 Cal.Rptr. 104, 655 P.2d 306].) In this case, the City and the collective bargaining units simply agreed to meet and confer regarding retiree benefits; however, they did not agree to eliminate or modify those benefits. In granting the petition compelling the City to refrain from reducing or eliminating retirement medical and dental benefits unless offsetting

benefits were provided, the trial court issued an advisory opinion. (*Carsten v. Psychology Examining Com.* (1980) 27 Cal.3d 793, 798 [166 Cal.Rptr. 844, 614 P.2d 276].)

## DISPOSITION

The judgment is reversed. Defendants shall recover costs on appeal.

Richli, Acting P. J., and Gaut, J., concurred.