[No. A050409. First Dist., Div. One. Feb. 27, 1992.]

MENDOCINO COUNTY EMPLOYEES ASSOCIATION, Plaintiff and Appellant, v.
COUNTY OF MENDOCINO et al., Defendants and Respondents.

## COUNSEL

Pano Stephens for Plaintiff and Appellant.

H. Peter Klein, County Counsel, and Sandra L. Applegate, Deputy County Counsel, for Defendants and Respondents.

## OPINION

DOSSEE, J.—An employee organization representing certain classifications and units of employees of Mendocino County filed a petition for writ of mandate in an attempt to stop an increase in the amount deducted from wages for contributions to the employees' retirement system. The trial court denied the petition, and we affirm the judgment of the trial court.

### FACTUAL AND PROCEDURAL BACKGROUND

In December 1987, pursuant to the Meyers-Milias-Brown Act (Gov. Code, § 3500 et seq.; hereafter MMBA),[1] the Mendocino County Employees Association (hereafter Association) and the Mendocino County Board of Supervisors entered into a memorandum of understanding regarding the wages, hours, and other terms and conditions of employment for the period from August 9, 1987, through August 5, 1989. The memorandum incorporated by reference all previous memoranda of understanding between the parties. Although some of the past memoranda had mentioned contributions to the county retirement system, the 1987-1989 memorandum was silent on the issue.

---

[1]All further statutory references are to the Government Code unless otherwise noted.

The county employees' retirement system is administered under the provisions of the County Employees Retirement Law of 1937 (§ 31450 et seq.; hereafter Retirement Law), and is managed by the county board of retirement (§§ 31520, 31520.1). The system is funded by contributions from both the county and the covered employees. In order to determine the appropriate contribution rates, an actuarial valuation must be performed at least once every three years. (§ 31453.) Based upon the actuarial valuation, the board of retirement recommends to the board of supervisors the contribution rates, and in accordance with the recommendations of the board of retirement, the board of supervisors must adjust the rates no later than 90 days after the beginning of the immediately succeeding fiscal year. (§§ 31453, 31454.)

An actuarial firm performed a valuation of the retirement system as of July 1, 1987, and based on its study, the firm recommended an increase in the contribution rates for both the county and the covered employees.[2] The board of retirement accepted the recommendation of the actuarial firm and in turn recommended to the board of supervisors that the contribution rates be increased accordingly. On May 24, 1988, the board of supervisors implemented the recommendation, but subsequently, on June 21, 1988, the supervisors voted to reconsider implementation of the increases in order to allow the appropriate employee organizations to discuss the matter with the county. (See § 31454.1.)

When representatives from the Association and the county met in June and July of 1988 to discuss the matter, the Association took the position that the change in contribution rates affected employee salaries and therefore the 1987-1989 memorandum of understanding would have to be renegotiated. The county refused to renegotiate the 1987-1989 memorandum of understanding.

On September 13, 1988, the board of supervisors once again implemented the increases recommended by the actuarial firm and the board of retirement. The Association responded by filing a petition for writ of mandate in an attempt to stop the increase in retirement deductions from employee wages and to obtain a refund of amounts already deducted pursuant to the increase. The Association alleged that the increased rate of contribution constituted a

---

[2]The actuary's report recommended increasing the county's contribution rate to 11.62 percent from 11.54 percent of the amount of the payroll, and increasing the employees' contribution rate to 7.81 percent from 7.63 percent.

decrease in wages contrary to the terms and provisions of the memorandum of understanding.[3]

At a hearing on the matter, the parties presented the 1987-1989 memorandum of understanding, the July 1987 actuarial valuation, the testimony of the actuary who prepared the valuation, and other relevant documentary exhibits. The court found no factual dispute and concluded that though the parties were required to meet and confer regarding the recommendation of the actuarial firm, nothing in the Government Code required that the memorandum of understanding be subject to renegotiation in its entirety as a result of the change in contribution rates. The court noted that the county did offer to meet and confer with the Association, but that the Association declined to negotiate if the only issue to be considered was the implementation of the recommended increase. The court determined that renegotiation of the memorandum of understanding was unwarranted and would undermine the purpose and intent of arriving at such an agreement. The court denied the petition for writ of mandate and entered judgment for the county.

## DISCUSSION

The issue raised by this appeal is whether the county is required to renegotiate an extant memorandum of understanding when adjustments to the amount contributed by employees to the county retirement system are required.

The resolution of this question turns on the interpretation of the applicable sections of the MMBA and the retirement law and the memorandum of understanding between the county and the Association. As the trial court found, there is no factual dispute in this case, and as the Association asserts, we must independently review the trial court's interpretation of the statutes and the memorandum of understanding. (*Leslie Salt Co.* v. *San Francisco Bay Conservation etc. Com.* (1984) 153 Cal.App.3d 605, 611 [200 Cal.Rptr. 575].)

■ The MMBA requires a public agency to "meet and confer" with recognized employee organizations on wages, hours, and the other terms and conditions of employment. (§ 3505.) The objective is to reach agreement on these matters prior to the adoption of the public agency's budget for the ensuing year. (*Ibid.*) Once an agreement is reached, the parties jointly

---

[3]The Association named the County of Mendocino, the Mendocino County Board of Supervisors, and the Mendocino County Auditor as respondents to the petition. For the sake of convenience, this opinion will in most instances simply refer to the county.

prepare a written memorandum of understanding, which is then submitted to the governing body for approval. (§ 3505.1.) Once approved, the memorandum of understanding becomes a binding agreement. (*Social Services Union* v. *Alameda County Training & Employment Bd.* (1989) 207 Cal.App.3d 1458, 1465 [255 Cal.Rptr. 746].)

In addition to the meet and confer requirement with respect to the preparation of a memorandum of understanding, the MMBA also specifies that a public agency shall give notice to the employee organizations of any proposed ordinance, regulation, rule, or resolution related to matters within the scope of representation, and that the public agency shall give the employee organizations the opportunity to meet with the governing body. (§ 3504.5.)[4]

■ Any question as to whether the county must meet and confer regarding the implementation of increases in retirement system contributions is answered by a specific section of the Retirement Law that requires the county to meet and confer with employee organizations prior to determining a course of action with respect to the recommendations contained in an actuarial valuation. (§ 31454.1.)[5] The meet and confer process does not bind the county to any particular result, but it does require that the parties attempt in good faith to resolve their differences. (*Independent Union of Pub. Service Employees* v. *County of Sacramento* (1983) 147 Cal.App.3d 482, 486-487 [195 Cal.Rptr. 206].)

---

[4]Section 3504.5 provides in pertinent part: "Except in cases of emergency as provided in this section, the governing body of a public agency, and boards and commissions designated by law or by such governing body, shall give reasonable written notice to each recognized employee organization affected of any ordinance, rule, resolution, or regulation directly relating to matters within the scope of representation proposed to be adopted by the governing body or such boards and commissions and shall give such recognized employee organization the opportunity to meet with the governing body or such boards and commissions. . . ."

Pursuant to section 3504, the scope of representation includes "all matters relating to employment conditions and employer-employee relations, including, but not limited to, wages, hours, and other terms and conditions of employment, except, however, that the scope of representation shall not include consideration of the merits, necessity, or organization of any service or activity provided by law or executive order."

[5]Section 31454.1 provides: "The independent assumptions and calculations of an actuary contained in the actuarial valuation required by Section 31453 shall not be subject to the 'meet and confer' provisions of the Meyers-Milias-Brown Act; however, it is recognized that such provisions require that the board or the board of supervisors meet and confer with representatives of recognized employee organizations prior to determining a course of action with respect to the recommendations contained in such an actuarial valuation. The intent of the Legislature, in enacting this section, is to insure the solvency and actuarial soundness of the retirement systems governed by this chapter by preserving the independent nature of the actuarial evaluation process."

 The Association contends the impact on wages caused by the increased retirement deductions necessarily required that the 1987-1989 memorandum of understanding be reopened and subject to renegotiation on all terms. The Association argues that the memorandum of understanding's silence on the issue of retirement contributions does not justify a unilateral change by the county.

The county employees' retirement system was created in 1948, and in accordance with the Retirement Law, actuarial valuations have been performed at least once every three years and adjustments to the contribution rates have been made as required. Benefit levels are set by statute. (See §§ 31676.1, 31676.11, 31676.12.) The contribution rates have not been an issue in the memoranda of understanding between the county and the Association, except in 1978 when the county agreed to pay a "temporary" retirement subsidy of 2.05 percent of the employees' base salary toward the employees' retirement contribution. This subsidy was eliminated in 1983.

The county is bound to implement the rates calculated by the independent actuary subject to the qualification that the county may elect to pay up to one-half of the employees' contribution (§ 31581.1). Section 31454.1 does not permit the Association to request to meet and confer with respect to the assumptions and calculations of the actuary, but it does allow the Association to present its views on the recommendations of the actuarial valuation. Nothing in section 31454.1 or in the more general meet and confer sections of the MMBA (§§ 3504.5 and 3505) suggests that a public agency is required to renegotiate an existing memorandum of understanding when adjustments to contribution rates are necessary.[6]

 In construing a statute, we must ascertain the intent of the Legislature so as to effectuate the purpose of the law. (*California School Employees Assn.* v. *Travis Unified School Dist.* (1984) 156 Cal.App.3d 242, 247 [202 Cal.Rptr. 699].) Our task is simplified in this case as the Legislature has stated that its intent in enacting section 31454.1 was "to insure the solvency and actuarial soundness of the retirement systems . . . by preserving the independent nature of the actuarial evaluation process." (§ 31454.1; see also Stats. 1980, ch. 720, § 1, p. 2145.) The purpose of the meet and confer requirement of section 31454.1 is to allow employees to obtain some assurance that their employer is following the directives of the actuary and the board of retirement and is maintaining a sound retirement system.

---

[6]There is no conflict between section 31454.1 and the MMBA, but even if there were, the more specific provisions of section 31454.1 would take precedence over the more general provisions of the MMBA. (Code. Civ. Proc., § 1859.)

 Surely the Legislature did not intend that an existing memorandum of understanding would be renegotiated every time an actuarial valuation was performed which recommended an adjustment of the contribution rates, particularly as the board of supervisors has virtually no discretion in the matter beyond the ability to agree to pay part of the employees' contribution. Renegotiation of the memorandum of understanding would not contribute to insuring soundness of the retirement system, nor would it contribute to efficiency in the administration of the system. Further, as the trial court recognized, no memorandum of understanding would be final or binding until an actuarial valuation was performed and then considered by the board of retirement and the board of supervisors; it cannot be that retirement system computations drive the entire process by which county employee wages, hours, and other terms and conditions of employment are set.

The Association's position is untenable, and none of the authority it has cited supports its argument that the memorandum of understanding must be reopened for negotiation. The parties to a contract are presumed to have the existing law in mind at the time of the execution of their agreement. (*Swenson* v. *File* (1970) 3 Cal.3d 389, 394 [90 Cal.Rptr. 580, 475 P.2d 852].) The existing law at all relevant times has required periodic adjustment of contribution rates to the retirement system, and this fact has apparently never caused any problems in the past or for the other employee bargaining units in this instance.

As required by law, the county offered to meet and confer with the Association regarding the recommendations of the actuarial firm and the board of retirement. The parties met, but the Association wanted to discuss other subjects embraced within the memorandum of understanding. Under these circumstances, we agree with the trial court that the county had no alternative but to impose the increased contribution rates as required by law.

 We also agree with the trial court that the Association's motion for relief (Code Civ. Proc., § 473) from its concession that there was no factual dispute was untimely as it was made after the trial court issued its intended statement of decision, and was nothing more than an attempt to argue a cause of action not pled in the petition for writ of mandate. The Association argues that declarations filed with its motion show that a factual dispute existed regarding the circumstances surrounding the negotiations over the contribution rates.

The declarations added nothing to the facts known by the trial court, nor to the resolution of the issue in this case, and the trial court properly

exercised its discretion (*Gardner* v. *Superior Court* (1986) 182 Cal.App.3d 335, 338 [227 Cal.Rptr. 78]; *Guardianship of Phillip B.* (1983) 139 Cal.App.3d 407, 428 [188 Cal.Rptr. 781]) when it denied the Association's motion for relief.

The judgment is affirmed.

Newsom, Acting P. J., and Stein, J., concurred.