**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| GAYLAN HARRIS, on behalf of himself and others similarly situated, *Plaintiff-Appellant*, <br><br> v. <br><br> COUNTY OF ORANGE, *Defendant-Appellee.* | No. 19-56387 <br><br> D.C. No. 8:09-cv-00098-AG-MLG <br><br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
Andrew J. Guilford, District Judge, Presiding

Argued and Submitted November 18, 2020
Pasadena, California

Filed October 28, 2021

Before: Johnnie B. Rawlinson and Danielle J. Forrest, Circuit Judges, and Morrison C. England, Jr.,[*] District Judge.

Opinion by Judge Rawlinson;
Partial Concurrence and Partial Dissent by Judge Forrest

---

[*] The Honorable Morrison C. England, Jr., United States District Judge for the Eastern District of California, sitting by designation.

# SUMMARY[**]

## Civil Rights

The panel affirmed the district court's summary judgment in favor of the County of Orange in an action alleging that the County breached its contractual obligations to retired County employees and deprived them of vested health benefits by restructuring the method through which the County assisted retired employees in defraying the cost of their health insurance.

In January 1993, the County and the Orange County Employee Retirement System (OCERS) entered into a Memorandum of Understanding (MOU) which allowed the County to access surplus investment earnings controlled by OCERS and which deposited a portion of the surplus into an Additional Retirement Benefit Account (ARBA) to pay for health insurance of present and future County retirees. In April 1993, the County adopted the Retiree Medical Plan, funded by investment earnings from the ARBA account and mandatory employee deductions. The Retiree Medical Plan explicitly provided that the Plan did not create any vested rights to benefits. Contemporaneous with or after adoption of the Retiree Medical Plan, labor unions entered into MOUs with the County providing that the County would administer a Retiree Medical Insurance Plan and retirees would receive a Retiree Medical Insurance Grant.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

From 1993 through 2007, retired employees received a monthly grant (the Grant Benefit) to defray the cost of health care premiums.  Beginning in 2004, the County negotiated with its labor unions to restructure the retiree medical program, which was underfunded.  Ultimately, the County approved an agreement with the labor unions that reduced benefits for retirees.

Plaintiffs brought suit asserting, among other things, that the 1993 MOUs demonstrated an intent by the County to create an implied vested right to the Grant Benefit, and that the County breached the MOUs by reducing the Grant Benefit.  Noting that the April 6, 1993, Retiree Medical Plan explicitly provided that the Plan did not create any vested right to benefits, the panel held that plaintiffs' claim to an implied vested right to the Grant Benefit was foreclosed; the prescribed law of Orange County set forth in the Retiree Medical Plan was at variance with such a right.  Accordingly, the panel held that plaintiffs failed to raise a material issue of fact regarding the County's intent to create an implied vested right to the grant provided by the County to defray the cost of health insurance.

The panel rejected plaintiffs' assertion that this courts prior decision in *Harris v. County of Orange (Harris IV)*, 902 F.3d 1061 (9th Cir. 2018), compelled a different result.  The panel held that at the summary judgment stage, the County provided evidence that the Retiree Medical Plan was adopted by resolution and therefore became governing law with respect to Grant Benefits.  As existing County law, the Retiree Medical Plan became part of the MOUs. The panel further held that the MOUs, as acknowledged by plaintiffs, were of limited duration and expired on their own terms by a specific date.  Absent express language providing that the

Grant Benefits vested, the right to the benefits expired when the MOUs expired. As to the MOUs in existence prior to adoption of the Grants Benefits, they clearly reflected an intention to incorporate the provisions of the Retiree Medical Plan into the MOUs.

The panel held that the Retiree Medical Plan was not unilaterally imposed on the unions and their employees without collective bargaining because the unions had the option to reject the plan or to negotiate different terms. Instead, the unions executed MOUs adopting the Retiree Medical Plan. Finally, the panel rejected the assertion that the Grant Benefit was deferred compensation, and vested upon retirement, similar to pension benefits. Applying the reasoning in *California Fire Local 2881 v. Cal. Pub. Emps. Ret. Sys.*, 6 Cal. 5th 965 (2019), the panel held that the Grant Benefit was an optional benefit rather than fixed compensation.

Concurring in part and dissenting in part, Judge Forrest agreed with the majority that the County's MOUs entered into with its employees' unions after its Retiree Medical Plan went into effect were deemed to have incorporated the terms of the Plan by operation of law. She also agreed that this court's decision in *Harris IV* did not foreclose that result. Judge Forrest disagreed, however, with the majority's conclusion that the Plan's terms were incorporated by operation of law into the MOUs that the County entered into before the Plan went into effect. Regarding the pre-Plan MOUs, California law gave plaintiffs a viable basis to assert an implied vested right to the Grant Benefit at issue. Thus, to prevail on its motion for summary judgment, the County needed to demonstrate—without relying on the Plan's anti-vesting term—that plaintiffs lacked any evidence proving that

the pre-Plan MOUs created an implied vested right. Because the County did not do this, Judge Forrest would reverse the district court's grant of summary judgment on the grounds that there were material questions of fact concerning whether the Grant Benefit provided in those pre-Plan MOUs was vested.

## COUNSEL

Michael P. Brown (argued), Gordon Tilden Thomas Cordell LLP, Seattle, Washington, for Plaintiff-Appellant.

Arthur A. Hartinger (argued), Ian T. Long, and Ryan McGinley-Stempel, Renne Public Law Group, San Francisco, California, for Defendant-Appellee.

Michael A. Conger, Law Office of Michael A. Conger, Rancho Santa Fe, California, for Amicus Curiae California Retired County Employees Association.

**OPINION**

RAWLINSON, Circuit Judge:

Appellants-Plaintiffs Gaylan Harris, Jerry Jahn, and James McConnell seek to reverse the district court's order granting summary judgment in favor of Appellee-Defendant Orange County on their claim that the County breached its contractual obligations to retired County employees, and deprived them of vested health benefits, by restructuring the method through which the County assisted retired employees in defraying the cost of their health insurance. Because Plaintiffs failed to raise a material issue of fact regarding the County's intent to create an implied vested right to the grant provided by the County to defray the cost of health insurance, we affirm.

## I.  BACKGROUND

In 1966, the County began offering group medical insurance to its retired employees, separate from that offered to its active employees. County retirees received a monthly grant to cover a small portion of the premiums, but this program was discontinued in 1978. In 1985, the County combined active and retired employees into a single unified pool, which effectively established a health insurance subsidy for retirees by lowering their premiums while raising active employee premiums (Retiree Premium Subsidy). From 1993 through 2007, retired employees also received a monthly grant (the Grant Benefit) to defray the cost of health care premiums.

On January 5, 1993, the County and the Orange County Employee Retirement System (OCERS) entered into a

Memorandum of Understanding (MOU) to allow the County to access $125,844,140.00 in surplus investment earnings controlled by the OCERS. The remaining $50,387,937.00 was deposited into an Additional Retirement Benefit Account (ARBA), exclusively for "paying towards health insurance for present and future retirees of the County." This MOU, referred to as the ARBA Agreement, required at least three labor unions to agree to enter into a retiree medical plan before the agreement would take effect.

On April 6, 1993, the County adopted the Retiree Medical Plan by resolution of the County Board of Supervisors. In order for an employee to be eligible for benefits under the Retiree Medical Plan, the employee's union was required to enter into an MOU with the County providing for coverage of the employee's work unit. In addition, the Retiree Medical Plan explicitly provided that the "Plan does not create any vested rights to the benefits provided hereunder on the part of any Employee, Retiree or any other person." The County's intent in approving the Grant Benefit was to induce employees to retire early, thereby reducing the County's workforce. The Retiree Medical Plan was funded by a mandatory contribution from active employees of 1% of their gross monthly wages, as well as investment earnings from the ARBA account. Active Employees also received a 1% increase in salary, which covered their required contribution In addition, any employee who left County employment before becoming eligible for a Grant Benefit would receive a lump sum cash rebate of his 1% salary contribution. Contemporaneous with or after adoption of the Retiree Medical Plan, all of the unions entered into MOUs with the County providing that the "County shall administer a Retiree Medical Insurance Grant Plan" and retirees "shall receive a Retiree Medical Insurance Grant."

Beginning in 2004, the County negotiated with its labor unions to restructure the retiree medical program, which was underfunded. Ultimately, the County approved an agreement with the labor unions that reduced benefits for retirees. Retirees maintain that the County's decision to reduce the Grant Benefit increased their health care costs significantly.

Plaintiffs filed a class action complaint on behalf of County retirees alleging that the County breached its contractual obligations to retirees by reducing the Grant Benefit. *See Harris v. Cty. of Orange*, 902 F.3d 1061, 1064–65 (9th Cir. 2018) (referred to by the parties as *"Harris IV"*). "In 2011, the district court granted the County's motion for judgment on the pleadings," and we reversed and remanded. *Id.* at 1065 (discussing *Harris v. Cty. of Orange (Harris I)*, 682 F.3d 1126, 1134 (9th Cir. 2012)). On remand, Plaintiffs filed a Second Amended Complaint, and the district court granted the County's motion to dismiss. *See Harris IV*, 902 F.3d at 1065. Plaintiffs filed a Third Amended Complaint, again alleging that the County breached its contractual obligations to Retirees by reducing the Grant Benefit. The district court dismissed the Third Amended Complaint with prejudice. *Id.* at 1066. Plaintiffs timely appealed and we reversed the district court "insofar as it dismissed [Plaintiffs' implied] contract claims regarding the Grant Benefit."[1] *Id.* at 1066–67, 1076.

The County subsequently moved for summary judgment on Plaintiffs' breach of contract claim. The district court granted the County's motion on the basis that Plaintiffs failed to raise a material issue of fact regarding the County's intent

---

[1] For a more detailed discussion of the procedural history of this case and related cases, *see Harris IV*, 902 F.3d at 1064–76.

to create an implied vested right to the Grant Benefit. Plaintiffs filed a timely appeal of the district court's judgment and we exercise our jurisdiction pursuant to 28 U.S.C. § 1291.

## II.  STANDARD OF REVIEW

When reviewing the grant of summary judgment, we review "the evidence in the light most favorable to [Plaintiffs] as the nonmoving part[ies]" and "review *de novo* whether any genuine issue of material fact exists and whether the district court correctly applied the relevant substantive law." *Retired Emps. Ass'n of Orange Cnty., Inc. v. Cnty. of Orange (REAOC V )*, 742 F.3d 1137, 1141–42 (9th Cir. 2014) (citation omitted).

## III.    DISCUSSION

Plaintiffs argue that because the 1993 MOUs demonstrated an intent by the County to create an implied vested right to the Grant Benefit, the County breached the MOUs by reducing the Grant Benefit. In *Retired Emps. Ass'n of Orange Cnty., Inc. v. Cnty. of Orange (REAOC III)*, 52 Cal. 4th 1171, 1194 (2011), the California Supreme Court, in response to our certified question, concluded that "[u]nder California law, contractual rights may be implied from legislative enactments under limited circumstances." The Court explained, however, that a plaintiff bears a "heavy burden" to overcome the presumption that the legislature did not intend to create vested rights. *Id*. at 1185, 1190 (citations omitted). Evidence of a vested right implied by ordinance or resolution must be "unmistakable" and creation of such a right will only be found "when the statutory language or circumstances accompanying its passage clearly evince a

legislative intent to create private rights of a contractual nature enforceable against the governmental body." *Id.* at 1187 (citation, alterations and internal quotation marks omitted). Importantly, "the law does not recognize implied contract terms that are at variance with the terms of the contract as expressly agreed *or as prescribed by statute*" or law. *Id.* at 1181 (emphasis added) *citing Shoemaker v. Myers*, 52 Cal. 3d 1, 23–24 (1990) (holding that "no employee has a vested contractual right . . . beyond the time or contrary to the terms and conditions fixed by law") (other citation omitted); *see also Miller v. State of California*, 18 Cal. 3d 808, 813 (1977) (in bank) (same).

Plaintiffs' claim to an implied vested right to the Grant Benefit is foreclosed because the prescribed law of Orange County is at variance with such a right. On April 6, 1993, the County adopted the Retiree Medical Plan by resolution of the County Board of Supervisors. *See REAOC III*, 52 Cal. 4th 1184 (explaining that, under Cal. Gov't Code 25300, the "appointment and conditions of employment of county employees" may be fixed "by resolution"). Section 1.3 of the Retiree Medical Plan states: "This Plan does not create any vested right to the benefits provided hereunder on the part of any Employee, Retiree or any other person." This section also states: "As provided by Sections [5.4 and 5.5],[2] this Plan may be amended or terminated at any time, in full or in part, by the County in its sole discretion." Sections 5.4 and 5.5 subject that discretion "to the terms of any Memorandum of Understanding with an Employee Organization."

---

[2] This section refers to "Sections 6.4 and 6.5." The Retiree Medical Plan, however, does not have a section 6.4 or 6.5. Section 5.4 governs termination and section 5.5 governs amendments.

As the governing law of Orange County prohibited Grant Benefits from vesting, Plaintiffs' claim of an implied vested right to those benefits is unavailing. Plaintiffs argue, however, that such a result is inconsistent with our prior decision in *Harris IV*. In *Harris IV*, however, we credited as true Plaintiffs' allegation in their complaint that "there is no indication that [Retiree Medical Plan's] contents were ever discussed with or disclosed to the unions during the negotiations that led to the adoption of those agreements," 902 F.3d at 1069 n.5, which would necessarily mean that there was also no allegation in the complaint that the Retiree Medical Plan was adopted by County resolution and had therefore become applicable law. *See Pilimai v. Farmers Ins. Exch. Co.*, 39 Cal. 4th 133, 138 (2006) (establishing that "parties are presumed to know and to have had in mind all applicable laws extant when an agreement is made").

At the summary judgment stage, however, the County provided evidence that the Retiree Medical Plan was adopted by resolution and therefore became governing law with respect to Grant Benefits. As existing County law, the Retiree Medical Plan became part of the MOUs "just as if . . . expressly referred to and incorporated" into the MOUs. *Id.* As existing law expressly provided that Grant Benefits did not vest, Plaintiffs are foreclosed from arguing that the MOUs contained a contradictory implied term. Of course if the MOU adopted by County resolution contained an express contradictory term, that express term would control. *See REAOC III*, 52 Cal. 4th 1185 (clarifying that county law encompasses "Board resolutions, including those resolutions approving or ratifying MOUs") (citation omitted). Plaintiffs do not address this point, but continue to assert that vesting is implied in the MOUs. However, that conclusory assertion is not sufficient to raise a genuine issue of material fact, as is

required to survive a summary judgment motion. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001) (holding that "conclusory allegations unsupported by factual data are insufficient to defeat [a] summary judgment motion") (citation omitted).

Significantly, the MOUs themselves demonstrate that the parties did not intend the Grant Benefit to vest. The MOU used as an example by Plaintiffs provides: "This Memorandum of Understanding sets forth the terms of agreement [between the parties] for the period beginning July 23, 1993 through June 23, 1994." In *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 441–42 (2015), the United States Supreme Court declared: "contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement" (citation omitted). "[W]hen a contract is silent as to the duration of retiree benefits, a court may not infer that the parties intended those benefits to vest for life." *Id.* at 442. Similarly, in *San Bernardino Pub. Emps. Assn. v. City of Fontana*, 67 Cal. App. 4th 1215, 1223 (1998), the California Court of Appeal held that where "agreements, as implemented through previous MOUs, were of fixed duration, . . . the employees had no legitimate expectation that the . . . benefits would continue unless they were renegotiated as part of a new . . . agreement." The court reasoned that the "benefits at issue could not have become permanently and irrevocably vested as a matter of contract law, because the benefits were earned on a year-to-year basis under previous MOUs that expired under their own terms." *Id*. at 1224. "Once the MOUs expired under their own terms, the employees had . . . no vested right . . ." *Id.* at 1223.

Here, the MOUs, as acknowledged by Plaintiffs, were of limited duration and expired on their own terms by a specific date. Plaintiffs point to language in the MOUs that eligible retirees "'shall receive' the promised benefits." However, the MOUs are silent with respect to how long this promise may be enforced. *See M & G Polymers*, 574 U.S. at 432–33 (*rejecting* argument that an agreement providing retirees would "'receive a full Company contribution towards the cost of health care benefits' . . . had created a vested right to such benefits") (alteration omitted). Absent express language providing that the Grant Benefit vests, the right to the benefit expired when the MOU expired.[3]

The dissent concedes that MOUs adopted after the Retiree Medical Plan became effective do not include an implied vested right to the Grant Benefit, due to the Plans' anti-vesting provisions. The dissent, however, insists that for MOUs adopted before the effective date of the Retiree Medical Plan, "the possibility that the pre-Plan MOUs created a vested right to the Grant Benefit still exists." *Concurring/Dissenting Opinion*, p. 34. This argument misapprehends the facts and the law.[4]

---

[3] Plaintiffs also argue that the district court erred in granting summary judgment on their theory that the County breached its commitment to use $50 million set aside in the ARBA account to only fund retiree medical insurance benefits. This argument is foreclosed for the same reason as the vesting argument. The Retiree Medical Plan includes no such continuing commitment. In addition, as Plaintiffs concede, they were not parties to the contract containing this commitment.

[4] As a preliminary matter, we note that a "possibility" of a factual occurrence is not sufficient to survive summary judgment. *See Matushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (explaining that a showing of "metaphysical doubt" is insufficient to survive summary judgment).

First and foremost, the dissent does not dispute factually that the MOUs were of limited duration and did not specify how long eligible retirees "shall receive" the promised Grant Benefit. Accordingly, under California law, we may not infer that the parties intended that the Grant Benefit vest for life. *See San Bernardino Pub. Emps.*, 67 Cal. App. 4th at 1223.

The dissent's position also relies on the mistaken assumption that the Grant Benefit was deferred compensation. *See id.* As discussed in greater detail below, the Grant Benefits were optional benefits rather than fixed compensation. *See California Fire Local 2881 v. Cal. Pub. Emps. Ret. Sys.*, 6 Cal. 5th 965, 981–82 (2019).

More importantly, the MOUs in existence prior to adoption of the Grant Benefits clearly reflected an intention to incorporate the provisions of the Retiree Medical Plan into the MOUs. These MOUs expressly provided that their Grant Benefit provisions would not become effective until the County's Retiree Medical Plan was adopted. *See e.g.*, April 1993 MOU Amendment–Peace Officer and Supervising Peace Officer Units (1993 Peace Officer MOU Amendment)[5] ("The provisions set forth in this [Retiree Medical Benefit] Section shall not be implemented unless the Board of Supervisors adopts a Retiree Medical Program to be applied to the employees of the County of Orange.")

Virtually identical language was used for subsequent MOUs. Because these provisions required that the Retiree

---

[5] The 1992 MOU mentioned by the dissent never governed Plaintiffs' Grant Benefits. The Retiree Medical Benefit Section in that MOU was supplanted by the 1993 Peace Officer MOU Amendment before the Retiree Medical Plan became effective.

Medical Plan be "implemented" before retirees would be entitled to the Grant Benefit, none of these sections provided the employees with any rights to the Grant Benefit before the non-vesting language in the Retiree Medical Plan became fixed by law. Plaintiffs simply cannot establish that implied vested rights to the Grant Benefit were created before the Retiree Medical Plan's anti-vesting provisions went into effect, because the Plan's implementation was a prerequisite to Plaintiffs' right to the Grant Benefit. *See Vallejo Police Officers Assn. v. City of Vallejo*, 15 Cal. App. 5th 601, 612 (2017) (explaining that "implied terms cannot be at variance with the terms of the contract as expressly agreed") (citations and internal quotation marks omitted).

In addition, Plaintiffs contend that because the County unilaterally drafted and imposed the anti-vesting provisions in the Retiree Medical Plan without engaging in collective bargaining, the plan is void. First, any claim that the Retiree Medical Plan is void based on a failure to bargain is barred under the three-year statute of limitations.[6] *See Coachella Valley Mosquito & Vector Control Dist. v. Cal. Pub. Emp't Rels. Bd.*, 35 Cal. 4th 1072, 1077 (2005) (clarifying that actions asserting a claim of the failure to bargain prior to July 1, 2001, are subject to a three-year statute of limitations from the date of the occurrence of the unfair practice).

---

[6] If the Retiree Medical Plan were void due to a failure to bargain, there would be no Grant Benefit at all. As already set forth, an effective plan was a prerequisite to Plaintiffs' right to the Grant Benefit under the MOUs. If the Plan was void, it was never effective, and Plaintiffs were never entitled to a Grant Benefit. *See Vernon Fire Fighters v. City of Vernon*, 107 Cal. App. 3d 802, 828 (1980).

The record reflects that the Retiree Medical Plan was *not* unilaterally imposed on the unions without collective bargaining. Section 3.1.3 of the Retiree Medical Plan explicitly provides that "an Employee who is in a unit represented by an Employee Organization shall be eligible for coverage in the Plan under section 3.1.1 or 3.1.2 [the sections providing the Grant Benefit] only if such Employee Organization enters into a Memorandum of Understanding with the County providing for such coverage for the members of that unit." In other words, the Retiree Medical Plan only became effective as to retirees upon each union negotiating and entering into an MOU with the County. Accordingly, the Retiree Medical Plan was not unilaterally imposed on the unions and their employees, because the unions had the option to reject the plan or to negotiate different terms. Instead, unions executed MOUs adopting the Retiree Medical Plan.

Contrary to Plaintiffs' assertion, this process was fully consistent with the Meyers–Milias–Brown Act (MMBA). In *Mendocino Cnty. Emps. Assn. v. Cnty. of Mendocino*, 3 Cal. App. 4th 1472, 1477–78 (1992) the California Court of Appeal explained that the "MMBA requires a public agency to 'meet and confer' with recognized employee organizations on wages, hours, and the other terms and conditions of employment." "Once an agreement is reached, the parties jointly prepare a written memorandum of understanding, which is then submitted to the governing body for approval." *Id*. "Once approved, the memorandum of understanding becomes a binding agreement." *Id*. at 1478 (citation omitted).

The MMBA requires that government entities notify unions of any proposed "resolution related to matters within the scope of representation." *Id*. (citation omitted). The

government entity must also provide unions an "opportunity to meet with the governing body." *Id*. (citation omitted); *see also Boling v. Pub. Emp't Rels. Bd.*, 5 Cal. 5th 898, 918 (2018) (interpreting the MMBA to require "reasonable advance notice and an opportunity to bargain before reaching a firm decision to establish or change a policy within the scope of the representation") (citations and emphasis omitted). The County complied with this notice requirement when adopting the Retiree Medical Plan by resolution, because the Retiree Medical Plan proposed changes to retiree benefits that unions were free to accept or reject. Additionally, Item #51 on the County's meeting agenda confirmed that prior to adoption, the "Retiree Medical Plan ha[d] been discussed and negotiated with all other employee organizations." Indeed, Plaintiffs confirmed their awareness that the Retiree Medical Plan was "passed by legislation." *See El Dorado Cnty. Deputy Sheriff's Assn. v. Cnty. of El Dorado*, 244 Cal. App. 4th 950, 956 (2016) (holding that when a "union official with authority to act has actual notice of the intended change, together with adequate time to decide whether to demand negotiation before a final decision is made, the union will be deemed to have received adequate notice") (citations omitted). A union's failure to assert bargaining rights after being notified of proposed changes to employment terms "constitutes waiver." *Id*.

Plaintiffs' position is further weakened by the fact that the unions failed to engage in bargaining activities after receiving notice of benefit changes. Under the MMBA as interpreted by California courts, the unions waived any right to bargain by failing to assert their bargaining rights after they received notice of the adopted Retiree Medical Plan containing the non-vesting provision. *See id*. Contrary to Plaintiffs' argument, because the unions had actual notice of the Retiree

Medical Plan and its proposed terms, the unions, ***not the County,*** had the obligation to raise the issue of bargaining over the terms of the plan.  *See Stockton Police Officers' Assn. v. City of Stockton*, 206 Cal. App. 3d 62, 67 (1988) (holding that once the government "has fully discharged its statutory duty to give notice of a proposed change," the union must timely "invoke the meet and confer requirement" and the failure to do so "constitutes a waiver of that right"). Because the unions failed to "invoke the meet and confer requirement," the term adopted by resolution that barred vesting of the Grant Benefit became part of the MOUs "just as if [it was] expressly referred to and incorporated" into the MOUs.  *Pilimai*, 39 Cal. 4th at 138; *see also Stockton Police*, 206 Cal. App. 3d at 66 (clarifying that, after giving proper notice, a government agency is not required to "meet and confer" absent a request from the union).

With respect to the MOUs executed before the County adopted the Retiree Medical Plan, the law and the record do not support Plaintiffs' contention that the Retiree Medical Plan was unilaterally imposed on the unions without collective bargaining.  In *County of Fresno v. Fresno Deputy Sheriff's Ass'n.*, 51 Cal. App. 5th 282, 298 (2020), the California Court of Appeal held that when the terms of an MOU "grant[ed] the county [the] authority to reassign employees, the association made a clear and unmistakable waiver of its right to renegotiate the grounds on which the county was permitted to reassign its employees, and the procedures for doing so."  The court reasoned that "when the action of the employer that is being challenged is directly addressed in the MOU, the parties are bound by the terms of the written agreement."  *Id.* at 297.

As explained, each of the MOUs expressly granted the County the right to "implement a Retiree Medical Insurance Grant plan for employees who have retired from County services and who meet the eligibility requirements set forth . . . below," without limiting the County's power in any way. The respective unions agreed to incorporate the future provisions of the Retiree Medical Plan into each of the MOUs. Plaintiffs cannot challenge the resulting Plan, because the MOUs did not purport to limit the County's power to implement a plan. Rather, the MOUs definitively acknowledged the County's right to implement the Retiree Medical Plan. Accordingly, Plaintiffs' contention of a failure to negotiate the terms of the Retiree Medical Plan is without merit.

Finally, both Plaintiffs and the dissent rely upon *California Fire* to posit that the Grant Benefit is deferred compensation, and vests upon retirement, similar to pension benefits. In *California Fire*, the California Supreme Court explained that "terms and conditions of public employment are ordinarily considered to be statutory rather than contractual." 6 Cal. 5th at 970. However, contractual protection may arise: "(1) when the statute or ordinance establishing a benefit of employment and the circumstances of its enactment clearly evince an intent by the relevant legislative body to create contractual rights or, (2) when, even in the absence of a manifest legislative intent to create such rights, contractual rights are implied as a result of the nature of the employment benefit, as is the case with pension rights." *Id*.

The California Supreme Court in *California Fire* nevertheless expressly reaffirmed the rule that implied contract terms cannot contradict terms prohibited by law. *See*

*id.* ("Where the relationship *is* governed by contract, a county may be bound by . . . implied terms of a written contract, as long as there is no statutory prohibition against such an agreement") (citation omitted, emphasis in the original). This rule, however, was simply part of "the broader principle that the law does not recognize implied contract terms that are at variance with the terms of the contract as expressly agreed or as prescribed by statute." *REAOC III*, 52 Cal. 4th at 1181 (citations and internal quotation marks omitted). The Court in *California Fire* did not apply this "broader principle" because no contrary statutory or contractual provision was asserted. This case is different. Here, the Retiree Medical Plan, which governs the Grant Benefit and was adopted by County Resolution, expressly declares that the "Plan does not create any vested right to the benefits provided hereunder." The Retiree Medical Plan, with this anti-vesting provision, became part of the MOUs by force of law and/or was expressly incorporated into the MOUs.

Even without an express anti-vesting provision, the California Supreme Court in *California Fire,* rejected the plaintiffs' claim that the benefit at issue was deferred compensation that could create an implied vested right. *See* 6 Cal. 5th at 987. The Court explained that the "opportunity to purchase ARS [additional retirement service] credit was not different in form from a variety of other optional benefits offered to public employees in connection with their work" that are not viewed as deferred compensation. *Id.* The Court continued that "[i]n addition to their salary or hourly pay, it is not unusual for public employees to be offered the opportunity to purchase different types of health insurance benefits from a variety of providers," but concluded: "We

have never suggested that this type of benefit is entitled to protection under the contract clause." *Id.*

The Retiree Medical Plan and the MOUs likewise do not provide insurance benefits, which in the absence of the non-vesting provision established by resolution found in this case, might be viewed as deferred compensation. Instead, they provide the opportunity for employees to purchase health insurance at a reduced cost due to the Grant Benefit. Unlike deferred compensation, which is earned by merely accepting employment, access to the health benefit required the employee to choose to pay his portion of the health insurance premium. In fact, the MOUs expressly provide that a retiree will "forfeit any right" to the Grant Benefit if the retiree "fails to enroll," "terminate[s] coverage," or "fail[s] to make necessary payments." In addition, the employee for a myriad of reasons could elect to decline the enrollment opportunity, and thereby forego any entitlement to the Grant Benefit. Just as in *California Fire*, "[i]f not taken advantage of, the opportunity" to purchase health insurance at a reduced rate was subject to expiration or termination. *Id.* at 986–87; *see also San Bernardino Pub. Emps. Assn.*, 67 Cal. App. 4th at 1224 (reasoning that the benefits could not have become vested when the MOUs providing those benefits "expired under their own terms"). The dissent's conclusion that the Grant Benefit may be vested simply cannot be reconciled with the MOUs' express provisions that the Grant Benefit may be forfeited. *See REAOC III*, 52 Cal. 4th at 1189 n.3 (explaining that a "benefit is deemed 'vested' when the employee acquires an irrevocable interest in the benefit"). As the court concluded in *California Fire*, there is simply "no basis" in this record for determining "that the opportunity to purchase [health insurance at a reduced rate] was granted as deferred compensation." 6 Cal. 5th at 987.

The Court in *California Fire* continued to recognize the "well settled [rule] that public employees have no vested right in any particular measure of compensation or benefits, and that these may be modified or reduced by the proper statutory authority." *Id.* at 977 (citation omitted). For that reason, the California Supreme Court has advised that "[a] court charged with deciding whether private contractual rights should be implied from legislation . . . should proceed cautiously both in identifying a contract within the language of a statute and in defining the contours of any contractual obligation." *REAOC III*, 52 Cal. 4th at 1188 (citation, alteration, and internal quotation marks omitted). The Court explained: "[I]t is presumed that a statutory scheme is not intended to create . . . vested rights and a person who asserts the creation of a contract with the state has the burden of overcoming that presumption."[7] *Id.* at 1186 (citation omitted). This "requirement of a 'clear showing' that legislation was intended to create the asserted contractual obligation . . . should ensure that neither the governing body nor the public will be blindsided by unexpected obligations." *Id.* at 1188–89 (citation omitted).

## IV.    CONCLUSION

To permit Plaintiffs' claims of an implied vested right to the Grant Benefit to proceed when County law requires a contrary result would effectively blindside the County with an unanticipated and unbudgeted obligation. *See id.* at 1189. Plaintiffs cannot raise a material issue of fact regarding their

---

[7] The dissent mistakenly contends, without citation to any authority, that the County could not rely on the anti-vesting provision to demonstrate the absence of evidence creating an implied right. *Concurring/Dissenting Opinion*, p. 23. Not even the Plaintiffs reach that far.

asserted vested right when that right was squarely foreclosed in the enactment creating those rights.  The district court properly granted summary judgment in favor of the County.

**AFFIRMED.**

---

FORREST, Circuit Judge, concurring in part, dissenting in part.

I agree with the majority that Defendant-Appellee Orange County's (County) Memoranda of Understanding (MOUs) entered into with its employees' unions after its Retiree Medical Plan (Plan) went into effect are deemed to have incorporated the terms of the Plan by operation of law. I also agree that our decision in *Harris v. County of Orange (Harris IV)*, 902 F.3d 1061 (9th Cir. 2018), does not foreclose that result. I disagree, however, that the Plan's terms are incorporated by operation of law into the MOUs that the County entered into *before* the Plan went into effect. Regarding the pre-Plan MOUs, California law gives the Plaintiffs-Appellants (Retirees) a viable basis to assert an implied vested right to the Grant Benefit at issue. Thus, to prevail on its motion for summary judgment, the County needed to demonstrate—without relying on the Plan's anti-vesting term—that Retirees lack any evidence proving that the pre-Plan MOUs created an implied vested right. Because the County did not do this, I would reverse and remand for further proceedings on the claims based on MOUs that became effective before the Plan.

## I.  BACKGROUND[1]

### A.

In the early 1990s, the Orange County Retirement System (OCERS) developed a surplus of approximately $200 million in investment returns from employees' pension contributions. At that time, "[t]here was an ongoing dispute . . . among the County, OCERS and the [u]nions over who was entitled to [the] surplus funds . . . . The County contended that the funds belonged to it, while the [u]nions argued that it belonged to the employees." Eventually, the parties reached a deal wherein the County received $150 million of the surplus funds for its general spending purposes; in exchange, approximately $50 million would be used as "seed" money to fund a new "grant" benefit program to help retirees pay the cost of health insurance (Grant Benefit). Because the County received $150 million, the deal relieved the County's general budgetary concerns, placated the unions, and "encourage[d] reduction in the County work force by offering early retirement incentives."

### B.

The County and the unions set forth the terms of the Grant Benefit in collective bargaining agreements called MOUs. By County ordinance, the Orange County Board of Supervisors (Board) was required to adopt the MOUs by resolution. *See* Orange County Code, tit. 1, div. 3, art. 1, § 1-3-2. On December 1, 1992, the Board adopted the first MOU.

---

[1] Because this appeal concerns a decision on the County's motion for summary judgment, the facts are recounted in the light most favorable to Retirees. *Frudden v. Pilling*, 877 F.3d 821, 828 (9th Cir. 2017).

Three more MOUs were adopted on April 6, 1993, and several more were adopted between May and September 1993. All the MOUs contained expiration dates.

The MOUs provide that retirees "shall receive" a monthly stipend to defray the cost of insurance premiums. They also state that the Grant Benefit would be partially funded by a mandatory 1% payroll contribution from gross wages of all active employees[2] and would confer a 1% salary increase. The parties agreed to calculate the monthly Grant Benefit by multiplying employees' years of service upon retirement by a fixed dollar amount. The parties set the multiplier at $10 and agreed that it would increase every year by up to 5% to adjust for inflation. Those leaving County employment before they were eligible for the Grant Benefit would receive a cash rebate of their 1% payroll contribution. The County also provided a 1% salary increase for its active employees.

## C.

On April 6, 1993—the same day the Board adopted three MOUs—the Board adopted the Plan. The Plan, which did not become effective until August 1, 1993, set forth the terms of the Grant Benefit. Section 1.3 of the Plan states that "the County, by establishing and maintaining this Plan, does not give any Employee, Retiree or any other person any legal or equitable right against the County" or "any vested right to the benefits provided hereunder." Sections 5.4 and 5.5 reserve to the County the right to amend or terminate the plan "in its

---

[2] According to Retirees, the Grant Benefit was also funded by $50 million of OCERS's surplus funds and a percentage of future investment earnings thereon and a one-time contribution of $6 million from the County.

sole discretion" but "subject to the terms of any [MOU]" with a labor union. Three former County directors testified that the anti-vesting provisions were not negotiated with the unions. Moreover, an attorney representing several of the unions during the relevant period testified that he never saw the Plan Document during the bargaining process.[3]

## D.

The County provided the Grant Benefit for approximately fourteen years. In 2000, the County experienced dramatic funding shortages, and in 2008, the County and the unions agreed to restructure its retiree health benefit program in two ways. First, the County would no longer subsidize health insurance premiums by "pooling" active and retired employees—a benefit referred to as the Retiree Premium Subsidy. Second, the County and the unions agreed to decrease the Grant Benefit by 50% and cut the inflation cap from 5% to 3% after retirees became eligible for Medicare at 65 years old. In exchange for these concessions, the County eliminated the 1% payroll contribution and gave significant pay raises to active employees. The County applied these benefit reductions to both active employees and retirees.

---

[3] As evidence that the Plan was negotiated with the unions, the majority points to Section 3.1.3 of the Plan. Maj. Op. at 16. But Section 3.1.3 simply states that employees are eligible to receive the Grant Benefit only if their union entered into a MOU with the County. The majority does not explain how this language shows that the Plan terms, including the anti-vesting provision, were negotiated with the unions before the Plan was adopted.

E.

Three retired County employees filed this class action on behalf of thousands of retired County employees. Retirees alleged that the County's benefit restructuring breached its contractual obligations in violation of the United States and California constitutions. After the district court granted the County's motion for judgment on the pleadings, Retirees appealed, and we reversed and remanded so that Retirees could "amend their [c]omplaint to set out specifically the terms of those MOUs on which their claim is predicated." *Harris v. Cnty. of Orange (Harris II)*, 682 F.3d 1126, 1135 (9th Cir. 2012).

On remand, Retirees filed a Second Amended Complaint, alleging that the Retiree Premium Subsidy was an implied term in the MOUs and that the County had contracted to provide the Grant Benefit in perpetuity, as shown in the express terms of the MOUs and by "circumstances accompanying" their adoption. Retirees attached to their complaint the Board's resolution adopting an MOU on August 3, 1993, as an "exemplar" of the agreements reached between the County and its main labor union each year between 1993 and 2007. The district court dismissed Retirees' claims relating to the Grant Benefit with prejudice. After some procedural twists and turns, Retirees filed a Third Amended Complaint, reasserting all claims, which the district court also dismissed with prejudice.

In our second review of this case, we affirmed the district court's dismissal of the claims related to the Retiree Premium Subsidy. *Harris IV*, 902 F.3d at 1066. But we reversed the district court's dismissal of Retirees' claims related to the Grant Benefit, concluding that Retirees had sufficiently

alleged that the County "entered into a contract that included implied terms providing healthcare benefits to retirees that vested for perpetuity." *Id.* at 1069 (citation omitted). We further explained in *Harris IV*:

> Retirees' contract claims are premised on the express and implied terms of the *MOUs*, not the [Plan], a separate document. Unlike the MOUs, which were the product of collective bargaining, the [Plan] was unilaterally created by the County. Retirees maintain that "[t]he 1993 Plan []," including its anti-vesting provision, "was not incorporated into or referenced in the binding contracts between the County and the unions, and there is no indication that its contents were ever discussed with or disclosed to the unions during the negotiations that led to the adoption of those agreements." The simple existence of the anti-vesting clause, therefore, provides no basis for holding Retirees' implied contract claims implausible as a matter of law.

*Id.* at 1069 n.5. In reaching this decision, we reviewed not only Retirees' complaint and the attached August 3, 1993, Board resolution adopting an MOU with its main labor union, *Id.* at 1063, but we also took judicial notice of the County's Plan and the Board's resolution adopting the Plan.[4] *See id.*

---

[4] Following our first remand in 2011, the district court took judicial notice of these two documents. In the *Harris IV* appeal, the County discussed the Plan in its briefing, Ans. Br. at 10, 28–30, 902 F.3d at 1061 (No. 13-56061), and included it in its Excerpts of Record, *id.* Suppl.

at 1069 n.5; *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("[A] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." (citation omitted)).

Following our second remand, the district court bifurcated discovery into liability and damages phases. The County moved for summary judgment on liability. The district court granted the County's motion, holding that Retirees had not made a "clear showing" that the Board had an "unmistakable" intent to provide the Grant Benefit in perpetuity. The district court explained that the County's Plan included anti-vesting language, which "confirm[ed] the Board's intent that the Grant [would] not vest." The district court further found that Retirees' evidence did not create a triable fact and was "insufficient to meet [Retirees'] burden at the summary judgment level." Retirees timely appeal.

## II. DISCUSSION

We review the district court's grant of summary judgment de novo. *Frudden*, 877 F.3d at 828. "Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-movant, there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Id.* As relevant here, to prevail on its motion,

---

Excerpts of Record at 32–56. The County explained that the Plan "was first adopted in April 1993, when the Board, by Resolution No. 93-369, approved the [Plan] providing for the Grant" and argued that the Board's "[l]egislation" adopting the Plan Document "clearly evinced the [Board's] legislative intent *not* to create vested rights." *Id.* Ans. Br. at 10, 28–30. When the *Harris IV* panel addressed this argument in footnote 5 of its decision, it also took judicial notice of the Plan documents.

the County "must . . . show that the [Retirees] do[] not have enough evidence of an essential element to carry [their] ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

## A.

The Contracts Clauses of the United States and California constitutions, U.S. Const. art. 1, § 10, Cal. Const. art. 1, § 9, prohibit the "enactment of laws effecting a substantial impairment of contracts." *California Fire Loc. 2881 v. Cal. Pub. Emps.' Ret. Sys.*, 6 Cal.5th 965 (2019) (internal quotation marks and citation omitted). In California, public employment benefits are usually established by statute or county ordinance, not contract. *See* Cal. Const. art. XI, § 1, subdiv. (b); Cal. Gov't Code § 25300. For this reason, local governments generally can modify or reduce their employees' benefits without implicating any contract rights or triggering Contract Clause concerns. *California Fire*, 6 Cal.5th at 977. However, where "agreements of employment between the state and public employees have been adopted by governing bodies, such agreements are binding and constitutionally protected." *Retired Emps. Ass'n of Orange Cnty. v. Cnty. of Orange (REAOC III)*, 52 Cal. 4th 1171, 1186, (2011) (citation omitted).

There are two exceptions to the general rule permitting legislative modification of statutory public employment terms and conditions. The first exception applies where the "statute or ordinance establishing the benefit and the circumstances of its enactment clearly evince a legislative intent to create contractual rights." *California Fire*, 6 Cal.5th at 970; *see REAOC III*, 52 Cal. 4th at 1187 ("Where, for example the legislation is itself the ratification or approval of a contract,

the intent to make a contract is clearly shown."). If a local government creates contract rights, the protection of the Contract Clause applies. *California Fire*, 6 Cal.5th at 978–79. The second exception protects employees' vested rights to deferred compensation "even in the absence of a clear manifestation of legislative intent." *Id.* at 979.[5] Deferred compensation is the "payment of salary which has been earned." *Id.* at 984 (citation omitted). A constitutionally protected, vested right to deferred compensation may be implied where a public employee has rendered services in exchange for compensation "paid not at the time the services are performed but at a later time." *Id.* at 985. A deferred compensation agreement is further evidenced by a benefit that "flow[s] directly from a public employee's service" where the magnitude of the benefit is "roughly proportional to the time of that service." *Id.* at 986.

## B.

"As a general rule, all applicable laws in existence when an agreement is made, which laws the parties are presumed to know and to have had in mind, necessarily enter into the contract and form a part of it, without any stipulation to that effect, as if they were expressly referred to and incorporated." *Swenson v. File*, 3 Cal. 3d 389, 393 (1970) (in bank) (internal quotation marks and citation omitted). Here, the Plan became

---

[5] Because *California Fire* held that the Contracts Clause protects deferred compensation "even in the absence of a clear manifestation of legislative intent," 6 Cal.5th at 979, the majority misstates California law when it says that creation of a vested right can "*only* be found 'when the statutory language or circumstances accompanying its passage clearly evince a legislative intent to create private rights of a contractual nature enforceable against the governmental body.'" Maj. Op. at 9–10 (emphasis added) (quoting *REAOC III*, 52 Cal. 4th at 1187).

Orange County law on August 1, 1993—the Plan's stated effective date.**[6]** *See* Cal. Gov't Code § 25300; Orange County Code, tit. 1, div. 3, art. 1, § 1-3-2; *see also City of Monte Sereno v. Padgett*, 58 Cal. Rptr. 3d 218, 223 (Cal. Ct. App. 2007) (holding that municipal ordinances apply prospectively from their effective date "unless a different intention is clearly expressed or implied"). There is no indication that the County clearly intended the Plan to apply before its stated effective date. *See Padgett*, 58 Cal. Rptr. 3d at 223. Thus, by operation of law, the MOUs that were adopted after the Plan's effective date of August 1, 1993, incorporated the Plan's terms, except to the extent the MOUs included express terms contrary to the Plan terms. *See REAOC III*, 52 Cal. 4th at 1185 ("[A] court must look to Board resolutions, including those resolutions approving or ratifying MOU[]s to determine the parties' contractual rights and obligations." (citation omitted)).

The parties agree that the MOUs do not *expressly* provide that the Grant Benefit was vested and must be provided in perpetuity—Retirees contend this was an *implied* promise. But, as the majority holds, relying on an implied term is unavailing after the Plan's express anti-vesting term obtained the force of law. *See id.* at 1181 ("[T]he law does not recognize implied contract terms that are at variance with the terms of a contract as expressly agreed or as prescribed by statute." (citation omitted)). For this reason, I concur that the district court's grant of summary judgment to the County as to claims based on the MOUs adopted after August 1, 1993, must be affirmed.

---

**[6]** The majority references the date the Plan was adopted by the Board—April 6, 1993—without discussing that the Plan expressly states it did not become effective until August 1, 1993. *See* Maj. Op. at 10.

Retirees suggest that *Harris IV* prevents us from concluding that the Plan's anti-vesting provision invalidates their implied contract claim to a vested right in the Grant Benefit. While it is true that *Harris IV* held that the "Retirees' contract claims are premised on the express and implied terms of the *MOUs*, not the Retiree Medical Plan, a separate document," 902 F.3d at 1069 n.5, this holding does not foreclose us from applying the incorporation-of-existing-law rule in the present case. To say that the MOUs govern the parties' contractual relationship is not to say that the MOUs exist independent from or are exempt from governing law. Moreover, *Harris IV* was premised on our conclusion that the Plan was not negotiated, unlike the MOUs. *Id.* But the Plan has the force of law regardless of whether it was negotiated. It is not inconsistent to hold both that the MOUs govern the parties' contractual relationship and that the MOUs are deemed to have incorporated existing law, including the Plan, under general rules of contract formation. Stated another way, by applying the incorporation-of-existing-law rule, we are not supplanting the MOUs in violation of the parties' negotiations or our decision in *Harris IV*. We are recognizing the import of the Plan under California law as it relates to the parties' post-Plan contracting activities.

## C.

The incorporation-of-preexisting-law rule does not apply to the MOUs adopted *before* the Plan went into effect, however, because the Plan was not an "applicable law[] in existence" when those MOUs were adopted. *See Swenson*, 3 Cal. 3d at 373. Again, as explained in *REAOC III*, "[w]here the [public employment] relationship *is* governed by contract, a county may be bound by an implied contract (or by implied

terms of a written contract), as long as there is no statutory prohibition against such agreement." 52 Cal. 4th at 1183.

The majority argues this is incorrect because the pre-Plan MOUs "reflected an intention to incorporate the . . . Plan" and did not become effective until after the Plan was adopted. Maj. Op. at 14. While the MOUs anticipated that the County would adopt a Retiree Medical Program and provided that the Grant Benefit would not be "implemented" before such program was adopted, the contracting parties nonetheless created and defined the terms of the Grant Benefit before the Plan was effective such that it cannot be said the Plan was "in existence" when the agreements memorialized in the pre-Plan MOUs were made. *Swenson*, 3 Cal. 3d at 393. Thus, in my view, the possibility that the pre-Plan MOUs created a vested right to the Grant Benefit still exists. The majority further asserts that the expiration dates in the MOUs prevent this court from *inferring* an intent by the parties to create vested rights. Maj. Op. at 13. That may be, but the expiration dates do not themselves foreclose the possibility of finding implied intent to create vested rights based upon ordinary contract-interpretation principles. *See M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 435 (2015) (holding "ordinary principles of contract law" control in determining the contracting parties' intent, not judicial inferences).

As such, for the MOUs that went into effect before August 1, 1993, the question is whether the County demonstrated, *as a matter of law*, that the Retirees cannot prove there was an implied agreement creating a vested right to the Grant Benefit or terms establishing that this benefit is properly considered deferred compensation. *See Nissan Fire & Marine Ins.*, 210 F.3d at 1102. In my view, the answer is no. The record shows that the County's active employees

rendered services in exchange for "a monthly fixed-dollar stipend," that was "paid not at the time the services [were] performed but [upon retirement]." *California Fire*, 6 Cal.5th at 985. The MOUs' terms regarding the funding and calculation of this Grant Benefit suggest that the County agreed to provide this stipend as deferred compensation. *Cf. Cal. Tchrs. Ass'n v. Cory*, 202 Cal. Rptr. 611, 618 (Cal. Ct. App. 1984) (finding an implied "promise of funding in exchange for the valuable services rendered by the [public employees]"). The Grant Benefit was funded in part by a mandatory 1% payroll contribution from all active employees. The parties expressly agreed that the stipend would be

> calculated by multiplying each employee's years of service upon retirement by a fixed dollar amount that was set at $10 in 1993 and increased by up to 5% each year to adjust for insurance premium inflation. For employees who left County employment before becoming eligible for the fixed dollar stipend, the 1993 Grant Program provided for a one-time "lump-sum" cash-out, which was 1% of final hourly pay rate multiplied by the hours paid since the Program's adoption.

For example, a public employee who worked for ten years would be entitled to a $100 monthly stipend during retirement—i.e., $10 per month x 10 years of service = $100 per month. The benefit, therefore, "flow[ed] directly from [the] public employee's service, and [its] magnitude [was] roughly proportional to the time of that service." *California Fire*, 6 Cal.5th at 986.

The County did not produce evidence negating Retirees' deferred-compensation claim, nor did it show that Retirees failed to produce evidence to support such claim. "To succeed on a grant of summary judgment, the moving party must demonstrate that there is "no genuine issue of material fact." *Frudden*, 877 F.3d at 828. True, as the majority points out, Retirees bear the ultimate burden of persuasion at trial. But as the moving party at summary judgment, the County needed to demonstrate that Retirees lack *any* evidence to establish their claim. They did not. The County, therefore, is not entitled to summary judgment on Retirees' deferred-compensation claim as to the pre-Plan MOUs. *See Nissan Fire & Marine Ins.*, 210 F.3d at 1102.

The majority errs in rejecting Retirees' claim as a matter of law based on its comparison of the Grant Benefit to the benefit analyzed in *California Fire*. In *California Fire*, the California Supreme Court analyzed a statute that eliminated "the opportunity for public employees to purchase additional retirement service [ARS] credit." *California Fire*, 6 Cal.5th at 970. The court noted that the statute "did not alter the rights of employees who had *already purchased* such credit." *Id.* (emphasis added). In holding that the ARS benefit was not deferred compensation, the California Supreme Court compared the opportunity to purchase ARS credit with other non-vesting benefits including "the opportunity to purchase different types of health insurance benefits from a variety of providers; to purchase life and long-term disability insurance; and to create a flexible spending account, by which certain medical and child care expenses can be paid with pre-tax income." *Id.* at 987.

The majority reasons that, just like the benefit in *California Fire*, the Grant Benefit merely "provide[s] the

opportunity for employees to purchase health insurance at a reduced cost" because "access to the health benefit required the employee to choose to pay his portion of the health insurance premium" or forego the benefit. Maj. Op. at 21. But it is undisputed that the Grant Benefit involves "a monthly fixed-dollar stipend" based on the retirees' years of service to defray health care costs for those already enrolled in County-offered health plans. As such, the Grant Benefit does not merely confer an *opportunity* to purchase health insurance. Moreover, in *California Fire*, the government's modification of the benefit was prospective; it did not affect those who had previously purchased ARS credit. 6 Cal.5th at 970. The opposite is true here. The restructuring of the Grant Benefit reduced the stipend for retirees who had already paid their funding contribution and earned the stipend through their employment service. "Just as each month of public service earn[ed] [the County's] employee[s] a month's cash compensation, it also earn[ed] [employees] a slightly greater [monthly stipend] upon retirement." *Id.* at 986. The County's changes therefore apply retroactively—they reduce the amount of the stipend that had been "literally[] earned by an employees' work." *Id.* Accordingly, the employees' opportunity to purchase ARS credit in *California Fire* is not the same as the Grant Benefit earned by Retirees in this case.

## III. CONCLUSION

I agree that the County is entitled to summary judgment as to Retirees' claims based on the MOUs adopted after the Plan's August 1, 1993, effective date because the terms of the Plan were incorporated into those MOUs by operation of law. However, as to claims based on the MOUs adopted before the Plan's effective date, I would reverse the district court's grant of summary judgment because there are material questions of

fact concerning whether the Grant Benefit provided in those pre-Plan MOUs was vested. Therefore, I respectfully concur in part and dissent in part.